RAMONA MESTRE, demandante y apelada, *v.* ALEJANDRO PABEYÓN, demandado y apelante.

*Número:* 11978 *Resuelto:* 12 de enero de 1962

*Fausto Ramos Quirós* y *Ernesto Juan Fonfrías,* abogados del apelante; *Guillermo Bauzá,* abogado de la apelada.

Sala integrada por el Juez Presidente Señor Negrón Fernández como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El matrimonio que por esta acción se intenta disolver se celebró en Nueva York. En aquella urbe tienen su domicilio ambas partes. Allá poseen bienes inmuebles y mantienen cuentas bancarias. En febrero del año 1955 compraron una casa en Puerto Rico para venirse a pasar una temporada. El demandado es ciego y los médicos le aconsejaron que pasara dos meses en un clima tropical antes de operarse. Alega la demandante que estando en Puerto Rico su marido la ha tratado cruelmente y le ha inferido injurias. Y por esa causal instó la presente acción. El marido contrademandó por la causal de adulterio, que alega tambén surgió en Puerto Rico. Es un pleito contencioso en que la parte demandada no sólo contestó sino que contrademandó. Es decir, ambas partes se acogieron a la jurisdicción de nuestros tribunales mediante sus comparecencias voluntarias.

Celebrándose la vista, surgió la cuestión que antes mencionamos, la de que el domicilio de ambos litigantes estaba en la ciudad de Nueva York, y que su intención era retornar a los Estados Unidos. Al surgir esta cuestión, el tribunal de instancia desestimó la demanda por entender que para que la corte adquiera jurisdicción en un caso de divorcio, precisa que por lo menos una de las partes esté domiciliada en Puerto Rico. Y para sostener sus tésis invocó a *William v. North Carolina*, 325 U.S. 226 (1945) ; *Alton* v. *Alton*, 207 F.2d 667 (3er. cir. 1953) y Reese, *Does Domicil Bear a Single Meaning*, 55 Colum. L. Rev. 589 (1955).

¿Fue correcta su actuación? ▮

El artículo 97 del Código Civil—31 L.P.R.A. 331—dispone en lo que al asunto que ahora consideramos se refiere que "[n]inguna persona podrá obtener el divorcio de acuerdo con este título, que no haya residido en el Estado Libre Asociado un año inmediatamente antes de hacer la demanda, *a menos que la causa en que se funde se cometiera en Puerto Rico o cuando uno de los cónyuges residiese aquí*". [Énfasis suplido.] Debe aclararse inmediatamente que en *Foss* v. *Ferris*, 63 D.P.R. 570 (1944) sostuvimos que el término re-

sidencia usado en la disposición transcrita equivale a domicilio. ▮

Así, nuestro estatuto contempla tres situaciones distintas en las cuales procede el divorcio: (1) estar domiciliado en Puerto Rico durante un año antes de incoarse la acción; (2) haber surgido en Puerto Rico la causal en que se funda la demanda; (3) haber surgido la causa de acción cuando uno de los cónyuges residía en Puerto Rico, aunque dicha causa de acción en sí no surgiera en Puerto Rico. Véase Mascareñas, *La Disolución del Matrimonio en el Derecho Puertorriqueño*, 29 Rev. Jur. U.P.R., 269 (1960). De acuerdo, pues, con los términos del artículo 97 no se requiere que las partes estén domiciliadas en Puerto Rico para que la corte pueda conocer de un pleito de divorcio, si la causal en que se funda se originó en Puerto Rico. La cuestión a determinar es si la ameritada disposición adolece de alguna omisión de perfiles constitucionales que requiera que los tribunales sostengan que, aún cuando la Asamblea Legislativa no exigió el domicilio de las partes cuando la causal surgiere en Puerto Rico, las cortes lo exijan. ▮

Estamos conscientes de lo delicado del problema que aquí consideramos. Luego de estar rigiendo una disposición legal por más de medio siglo, se sostiene que lo que ella dispone es defectuoso y que para que tengan completa validez las actuaciones judiciales que en ella se fundan, precisa añadirle un ingrediente más a la segunda alternativa del art. 97, el domicilio. Tenemos pues, que examinar las autoridades en que se fundó el tribunal de instancia para dictar su fallo, con el propósito de determinar si son tan exigentes como se pretende, ya que el resultado sería que muchos divorcios cuyo número no estamos en condiciones de determinar, serían nulos, con todas las consecuencias que esto conllevaría como posibles procesos por bigamia, enajenaciones de bienes sujetas a impugnación, y otras.

En el segundo caso de *William* v. *North Carolina*, supra, que es el que invocó el juez de instancia, se dice, por vía de

dictum que "bajo nuestro sistema de derecho, el poder de los tribunales para conceder un divorcio—la jurisdicción estrictamente hablando—se basa en el domicilio". Pero es que en el primer caso de *William* v. *North Carolina*, 317 U.S. 289, 297 (1942) se dijo: "[e]l domicilio del demandante que no es pertinente en cuanto a jurisdicción concierne en acciones personales, se le reconoce... como esencial para que una sentencia de divorcio tenga validez extra-territorial, *por lo menos cuando la parte demandada no ha sido emplazada personalmente, ni ha comparecido.*" (Énfasis suplido.)

Los estudiosos del derecho están contestes en que el problema que aquí consideramos no ha sido resuelto por el Tribunal Supremo de los Estados Unidos. Expresiones en este sentido pueden encontrarse en 1955 *Ann. Survey Am. L.* 56, 31 N.Y. U.L. Rev. 41 (1956); *Divorce Jurisdiction and the Full Faith and Credit Clause*, 30 St. John's L. Rev. 270, 277 (1956); Nota, 15 La. L. Rev. 809 (1955); 2A Nelson, *Divorce and Annulment* §21.29 (ed. 1961).

El origen de la doctrina que estamos considerando se remonta a una situación que prevaleció en Gran Bretaña. La corte que entendía en casos de divorcio era un tribunal eclesiástico especial al cual solo podían recurrir las personas pertenecientes a la iglesia para la cual se estableció. Las que no pertenecían a la iglesia no podían acudir a él. Con el correr del tiempo, al desaparecer ese foro, los tribunales generales que lo sustituyeron adoptaron por analogía la doctrina de que se requería pertenecer a la comunidad a la cual servía un tribunal para poder obtener un divorcio. Radin, *The Authenticated Full Faith and Credit Clause, Its History*, 39 Ill. L. Rev. 1, 31, (1944).

De Inglaterra pasó esa teoría a los Estados Unidos. El Juez Story la expuso en su obra sobre Derecho Internacional Privado y Bishop la popularizó. Howe, *Foreign Divorce Decrees in New York State*, 40 Colum. L. Rev. 373 (1940); Foster, *Decisions Since Haddock v. Haddock*, 47 A.B.A.J. 963

(1961) ; Cook, *Is Haddock v. Haddock Overruled?* 18 Ind.
L. J. 165, 166 (1943).

La base de la doctrina que requiere el domicilio como con-
dición para que el tribunal adquiera jurisdicción está predi-
cada en que el estado donde están domiciliadas ambas partes,
o por lo menos una de ellas, es el estado que más directamente
tiene que ver con el matrimonio que se trata de disolver,
Radin, *Authenticated Full Faith and Credit Clause*, supra.

Ahora, el caso de *Alton* v. *Alton,* una decisión cuatro a
tres, citado por el tribunal de instancia para sostener su
fallo, va más lejos y sostiene que si ninguna de las partes
está domiciliada en el estado donde se decreta el divorcio,
se viola la cláusula del debido procedimiento de ley.    Es
interesante apuntar que es la primera vez que a ese efecto
se invoca por un tribunal federal el citado precepto consti-
tucional.    Su aplicación ha sido vigorosa y frecuentemente
criticada.    No se encuentra base racional alguna para ello.
Radin, *Authenticated Full Faith and Credit Clause,* supra.
Rheinstein, *Constitutional Bases of Jurisdiction,* 22 U. Chi. L.
Rev. 775 (1955) ; Nota 24, Fordham L. Rev. 456, 460
(1955)

Sostienen estas autoridades que lo que el debido proce-
dimiento garantiza es que una *persona* no será privada de
su vida, de su libertad ni de su propiedad sino es de acuerdo
con todas las garantías y salvaguardas que la constitución
y la ley disponen.    Y se plantean el problema sobre de cuál
de estos conceptos básicos es que se priva, y a quién, en un
caso en que ambas partes están ante el tribunal litigando sus
respectivas contenciones.    Mantienen que quizás se vulnera
algún derecho del estado donde están domiciliados los cón-
yuges, pero apuntan que la cláusula del debido procedimiento
a quien garantiza es a la persona y no a los estados.    Y la
descartan como claramente inaplicable.    Obviamente existe
una más sólida base para sostener la tesis de los que mantie-
nen que es necesario que por lo menos una de las partes sea
domiciliada del estado que conoce del divorcio.

Pero es que hay otros factores que indudablemente pueden considerarse apropiados para basar en ellos la jurisdicción de un tribunal en estos casos. Uno de ellos es el que desde hace casi sesenta años exigió la Asamblea Legislativa de Puerto Rico. Que la causal invocada para la disolución del matrimonio surgiera aquí. La facilidad para que los testigos concurran al juicio obviamente es un factor, entre otros, a favor de esta teoría. *Divorce Jurisdiction and the Full Faith and Credit Clause*, 30 St. John's L. Rev. supra; Nota 42 Cornell L. Q. 270 (1957).

Tradicionalmente se ha sostenido que hay tres teorías sobre jurisdicción en casos de divorcio. La teoría del contrato, o sea que tienen jurisdicción para decretar divorcios los tribunales donde se efectuó el contrato matrimonial. Esta es la que impera en el estado de Nueva York, Sección 1147(2) *N.Y. Civil Practice Act*. Otra es la teoría punitiva: tienen jurisdicción para decretarlos los tribunales del estado donde surgió la causal. Esta la adoptaron Missouri, (24 V.A. M.S. sec. 452.50), Colorado, (Rev. St. 46-1-3) (1953) y Minnessota, (M.S.A. §518.07) y es la segunda de las alternativas que contempla el art. 97 del Código Civil, arriba transcrito. Por último, la teoría del status, que es la que hasta ahora predomina en la mayoría de las jurisdicciones. *Restatement, Conflict of Laws* § 111 (1934). La corte del domicilio de uno de los cónyuges es la llamada a conocer del status civil de sus domiciliados. Howe, *Foreign Divorce Decrees*, supra. ■

El interés que despertó el caso de *Alton* v. *Alton*,(¹) y el que le siguió, *Granville-Smith* v. *Granville-Smith*, 349 U.S. 1 (1955) (²) ha motivado una serie de comentarios en las distintas revistas jurídicas, que critican acerbamente la doctrina que sostiene que la única forma en que una corte puede ad-

---

(¹) El caso de *Alton* fue desestimado por académico por el Tribunal Supremo Federal.

(²) El Tribunal Supremo dispuso del caso de *Granville-Smith* por otras consideraciones y no discutió la cuestión del requisito domiciliario.

quirir jurisdicción en casos de divorcio es que una de las partes esté domiciliada en el estado donde se solicita. 34 B.U.L.Rev. 216 (1954) ; 42 Geo. L. J. 450 (1954) ; 22 Geo. Wash. L. Rev. 356 (1954); 5 Hastings L. J. 246 (1954); 27 Temp. L.Q. 501 (1954) ; 5 Syracuse L. Rev. 219 (1954) ; 32 Texas L. Rev. 610 (1954); Wash. & Lee L. Rev. 206 (1954).

En el estado de Nueva York, como hemos visto, no se requiere que las partes estén domiciliadas. Se requiere, repetimos, que el matrimonio que se intenta disolver se haya celebrado en aquel estado. Y si bien todavía el más alto tribunal de aquel estado no ha hecho determinación alguna sobre esta cuestión una Corte Suprema dictaminó que no era necesario el factor domiciliario. *David-Zieseniss* v. *Zieseniss*, 129 N.Y.S.2d 649 (1954).

En Nuevo México se concedió un divorcio a un oficial naval estacionado en una base en aquel estado sin que estuviera allí domiciliado. *Grownover* v. *Grownover*, 274 P.2d 127 (1954). Véase *Wallace* v. *Wallace*, 320 P.2d 1020 (1958) y Nota 15 Wash. & Lee L. Rev. 248 (1958).

En Missouri existe, como ya dijimos, una disposición estatutaria similar a la nuestra. Si bien hay una serie de casos que sostuvieron que esa disposición había que interpretarla conjuntamente con la que requería que la demanda se radicara en el tribunal del condado donde residía el demandante, *Hays* v. *Hays*, 24 S.W.2d 997 (1930) ; *Kruse* v. *Kruse*, 25 Mo. 68 (1857), introduciéndole pues el requisito de la residencia, lo cierto es que casos de más recientes fechas han abandonado ese criterio y sostienen que si la causa de acción surge en el estado, eso sin más, es suficiente, *Kokinakis* v. *Kokinakis*, 180 S.W.2d 243 (1944) ; *Montgomery* v. *Montgomery*, 185 S.W.2d 870 (1945) ; *Price* v. *Price*, 281 S.W.2d 307 (1955) ; *Watson* v. *Watson*, 291 S.W.2d 198 (1956). Pero véase Comentarios 24 Mo. L. Rev. 218 (1959).

Por otro lado la doctrina del domicilio ha sido criticada, Stevenson, *Jurisdiction in Divorce Cases: The Unsoundness*

*of the Domiciliary Theory*, 42 A.B.A.J. 222 (1956) ; Amdur, *Constitutionality of Non Domiciliary Divorce Statutes*, 11 W. Res. L. Rev. 459 (1960). Y en Inglaterra, que fue donde se originó, ya no se requiere. *Griswold, Recognition of Divorce Decrees*, 65 Harv. L. Rev. 193, 200 (1951). Al mismo efecto Cowen, *Divorce and the Domicile*, 68 L. Q. Rev. 88, 89 (1952). Es curioso a los extremos que llegó en Inglaterra el concepto del domicilio como requisito para obtener un divorcio. Griswold, en el estudio que acabamos de citar, a la pág. 194 cita el caso de *Le Mesurier* v. *Le Mesurier*, [1895] A. C. 517 (P.C.) proveniente de Ceilán. En ese caso marido y mujer habían residido en Ceilán por nueve años. El era un servidor público y como estaba allá en su capacidad oficial retenía su domicilio en Inglaterra. Se sostuvo que las cortes de Ceilán no tenían jurisdicción para conocer del asunto.

Y así va horadándose la doctrina del domicilio. Es interesante examinar el estudio del desarrollo de la doctrina del domicilio en el derecho americano que aparece en New York University Law Quarterly Review. Al considerar el estado de la ley en el año 1954 se dice:

"Aunque el requisito del domicilio aún se considera necesario para que los tribunales adquieran jurisdicción en casos de divorcio, [se refiere a los casos de Nueva York y Nuevo Mexico que arriba consideramos] estas grietas en sus cimientos sugieren que el descontento producido por la aplicación de la doctrina del domicilio puede eventualmente obligar a que se sustituya por otro concepto jurisdiccional más adecuado." 1954 *Ann. Survey Am. L.* 36, 30 N.Y. U.L. Rev. 33 (1955).

Dos años más tarde, en el 1956 se resume así el estado del derecho en cuanto a esta materia concierne:

"Cada día hay más base para creer que el derecho se está alejando de la doctrina constitucional de que el domicilio es la única base jurisdiccional en casos de divorcio. Durante el pasado año no han surgido nuevos casos de importancia que sostengan esta tesis, pero un cúmulo de escritos bien pensados critican

la artificialidad de la teoría in rem, como única base jurisdiccional en acciones de divorcio.  La evaluación de los casos de *Alton* y *Granville-Smith,* y de otros, al mismo efecto, continuan en forma persistente y prolífera, y la gran parte de la discusión da por sentado que se vislumbran nuevos, bien fundados y diferentes pronunciamientos judiciales.  Existe muy poca, si alguna tendencia a sostener que debe abandonarse la doctrina que requiere el domicilio como base jurisdiccional en casos de divorcio; más bien se sugiere que deben admitirse bases jurisdiccionales adicionales como alternativa para hacer la ley más consonante con los usos tradicionales..."

1956 *Ann. Survey Am. L.* 35, 32 N.Y. U.L. Rev 24 (1957).

Y en la Nota que aparece en 42 Cornell L. Q. 270 se dice:

"Lo que es 'razonable' puede significarse en otras formas— por ejemplo, un requisito de residencia de seis meses *o un requisito de que la causa de acción surja dentro del estado.*   La verdadera cuestión en cada caso sería si el estado que concede el divorcio tiene interés suficiente en la relación marital y en las partes que justifique su intervención y la subordinación de los derechos de todos los otros estados.   Bajo esta solución, el domicilio de una o ambas partes aún le daría al estado un interés sobre el cual basar su jurisdicción pero su ausencia no sería de por sí determinante."   (Énfasis suplido.)   ▆

Si esta es la situación que prevalece en cuanto al requisito del domicilio como base jurisdiccional de los tribunales ¿cómo es posible que consideremos adoptarlo ahora, luego de existir en nuestro cuerpo legal por más de medio siglo un estatuto que dispensa de ese requisito, en circunstancias que se ha sostenido es razonable no requerirlo?  Y esto es más así, cuando sentencias del Tribunal Supremo de los Estados Unidos posteriores a las de los dos *Williams* indican que un divorcio decretado en las circunstancias que prevalecen en este caso, merecería entera fe y crédito de los otros estados, *Sherrer* v. *Sherrer,* 334 U.S. 343 (1948); *Coe* v. *Coe,* 334 U.S. 378 (1948); *Johnson* v. *Muelberger,* 340 U.S. 581

(1951); *Cook* v. *Cook*, 342 U. S. 126 (1951); Foster, *Decisions Since Haddock* v. *Haddock,* supra; Clark, *Estoppel Against Jurisdictional Attack on Decress of Divorce,* 70 Yale L. J. 45 (1960); Comentarios, 39 Cornell L. Q. 293 (1954); Cf. Griswold, *Recognition of Divorce Decrees,* supra, pág. 216.

Así, no estaríamos justificados en adoptar una posición que podría tener como consecuencia el que se conviertieran en nulos una serie de divorcios, con los resultados funestos que esto conllevaría. Ver Fernández Cuyar, *Areas Sensitivas Constitucionales,* 7 Rev. C. Abo. P.R. 121 (1944).

Los tribunales de primera instancia deben siempre velar porque las causas que se aduzcan para disolver un matrimonio estén sostenidas por prueba suficiente. "El vínculo matrimonial, aunque derivado de un contrato civil, no debe ser fácil de disolverse." *Jirot* v. *Crispín,* 23 D.P.R. 822 (1916) y *Sánchez* v. *Soldevila,* 6 D.P.R. 225 (1904). Sabemos que el problema de reconocimiento por otros estados de las sentencias de divorcio surge cuando se utiliza el divorcio como atracción turística. Ver Lindley, *Foreign Divorce: Where Do We Go From Here?,* 17 U. Pitt. L. Rev. 125 (1956). Aquí nunca se ha utilizado con ese propósito. Una política de esa naturaleza no estaría a tono con nuestras tradiciones, nuestras costumbres y nuestra moral. Recuérdese que en *Foss* v. *Ferrís,* supra, no concedimos el divorcio a un soldado destacado en Puerto Rico, por no cumplir con el requisito del domicilio, en circunstancias que en el caso de *Grownover* v. *Grownover,* supra, se le concedió.

*Se revocará la sentencia recurrida que dictó el Tribunal Superior, Sala de San Juan con fecha 18 de agosto de 1955, y se devolverá el caso para ulteriores procedimientos.*