EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPE-
RIOR DE PUERTO RICO, SALA DE CAGUAS, HON. FRANCISCO
COLLAZO LIZARDI, JUEZ, demandado; FIDELINA SANTANA,
interventora.

Número: O-67-22        Resuelto: 15 de abril de 1970

*J. B. Fernández Badillo, Procurador General,* e *Ida Cardona de Hernández, Procuradora General Auxiliar,* abogados del peticionario; *Benigno Dávila,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En 21 de diciembre de 1965 Fidelina Santana interpuso demanda de divorcio en la Sala de Caguas del Tribunal Superior. Alegó que desde hacía más de un año ella residía en el barrio Santa Rosa de Dorado, y el demandado Ismael López residía en la ciudad de Nueva York; que las partes contrajeron matrimonio en la ciudad de Nueva York el 13 de noviembre de 1948; que existían dos hijos de 14 y 8 años de edad; no existían bienes gananciales, y por causal de divorcio alegó que desde hacía más de 3 años las partes habían vivido y vivían en completa separación sin interrupción alguna.

En 13 de enero de 1966 la Sala ordenó que el demandado fuera emplazado en Nueva York por medio de notificación personal, la cual se efectuó el 19 de enero de 1966. En 10 de febrero se anotó la rebeldía al demandado y al día siguiente se celebró la vista del caso.

En la parte pertinente la transcripción de la vista oral es como sigue:

"P. ¿Y ustedes viven juntos o separados?

R. Separados.

P. ¿Dónde y cuándo se separaron?

R. En el año 1958.

P. ¿En dónde?

R. En New York.

P. ¿Y cuando se vino usted para Puerto Rico?

R. En noviembre de 1960.

P. ¿Y vive dónde?

R. En el barrio Santa Rosa, Dorado, Puerto Rico.

P. Desde que usted se vino a Puerto Rico, ¿lo ha visto alguna vez?

R. No.

P. ¿El estuvo en Puerto Rico no hace mucho?

R. Estuvo en Puerto Rico.

P. ¿Usted lo vio?

R. No lo vi.

P. ¿Trató de verlo?

R. Sí.

P. ¿Para qué?

R. Para ver si le pasaba algo a los hijos.

P. ¿A qué se dedica?

R. A predicar.

P. ¿En qué iglesia?

R. Pentecostal.

P. ¿En qué trabaja usted aquí?

R. Cosiendo."

.   .   .      .      .      .      .      .      .

"Hon. Juez:

P. ¿Son dos hijos habidos en el matrimonio?

R. Dos.

P. ¿Qué edades tienen?

R. Catorce años y ocho años.

Puede retirarse. Se declara con lugar la demanda de divorcio. Se le concede la custodia de los hijos habidos en el matrimonio a la demandante. Se fija una pensión alimenticia a ser pasada por el demandado de quince dólares ($15) semanales."

La sentencia fue notificada y archivada en 16 de febrero de 1966.

En 9 de marzo de 1966 compareció el Fiscal de Distrito de Caguas; solicitó intervenir y alegó que de una investigación practicada por la Fiscalía se desprendía que ninguna de las partes tenían la residencia o el domicilio necesarios en Puerto Rico de acuerdo con la ley. Solicitó que permitida la intervención y probados esos hechos, se declarara nula la sentencia de divorcio.

Celebrada la correspondiente vista, la Sala de Caguas del Tribunal Superior en 7 de diciembre de 1966 denegó, mediante resolución fundamentada, la intervención del Ministerio Fiscal. Esta resolución es la que ahora revisamos.

Dispone el Art. 64 del Código Político, según ha sido enmendado, que el Secretario de Justicia representará al Estado Libre Asociado de Puerto Rico, bien personalmente, o por medio de sus auxiliares o cualquiera de los fiscales, en todas las demandas y procesos civiles o criminales *en que fuere parte*; y cuando fuere requerido por el Gobernador o por cualquier Jefe de Departamento, podrá representar también, ante cualquier tribunal, a cualquier funcionario, empleado o agente del Gobierno Estadual que demandare o fuere demandado en su capacidad oficial; y se dispone que los *procesos criminales*, excepto en determinado caso, serán promovidos por el fiscal correspondiente sin especial autorización del Secretario de Justicia, aunque en todos estos casos el Secretario de Justicia puede intervenir en interés del público.

En adición a la expresión general que permite la intervención del Secretario de Justicia en todo pleito civil o criminal en que el Estado Libre Asociado *fuere parte,* las leyes autorizan la intervención del Secretario de Justicia en la litigación de una serie de casos específicos, en ninguno de los cuales está incluida una acción de divorcio.

La Ley Núm. 23 de 24 de julio de 1952, creó cargos de Fiscales Especiales Generales, de Fiscales y de un Procurador Especial para casos de menores, y dispuso que *los Fis-*

*cales* y los Fiscales Auxiliares tendrían aquellos poderes y ejercerían aquellas funciones previamente ejercidas por ellos o por funcionarios de igual categoría bajo autoridad legal hasta la fecha de la vigencia de dicha Ley, y el Procurador Especial tendría aquellos poderes y ejercería aquellas funciones previamente ejercidas por el procurador para el Tribunal Tutelar de Menores.

El Código de Enjuiciamiento Criminal de 1902, ed. 1935, se refiere en sus Arts. 95 al 109 a las facultades y deberes del fiscal, con ciertas enmiendas que han ocurrido posteriormente. La Ley de 3 de marzo de 1904—3 L.P.R.A. sec. 95—dispone que será el deber de cada fiscal el procesar a todos los delincuentes por crímenes y delitos de que pueda conocer bajo la autoridad del Estado Libre Asociado de Puerto Rico *y ejercer todas las acciones civiles que conciernan al Estado Libre Asociado*, y llenar cumplidamente todos los otros deberes que le confieran las leyes y comisiones del Secretario de Justicia.

Sabemos que tradicionalmente el fiscal ha tenido intervención por disposición de ley desde muy al principio en una serie de procedimientos civiles para todos familiares, entre los cuales el legislador nunca incluyó la acción de divorcio. Además del Fiscal de Distrito, existe el Procurador Especial de Relaciones de Familia del Tribunal Superior, cargo creado por la Ley Núm. 140 de 23 de abril de 1952. Por ley ejerce las mismas facultades y atribuciones que corresponden a un fiscal auxiliar, sólo que las ejerce en relación con los asuntos que tramite o que el Juez de Relaciones de Familia del Tribunal Superior le encomiende conforme a la ley. Estos deberes y funciones del Procurador Especial fueron expresamente enumerados por la Ley Núm. 140, y el legislador no le concedió intervención a este Procurador Especial de Relaciones de Familia en casos de divorcio.

■ La Ley Núm. 140 de 1952 fue derogada por la Núm. 75 de 6 de junio de 1968, en que se enumeran nueva-

mente las atribuciones del Procurador Especial, y tampoco se le da intervención en casos de divorcio. Bajo ambos estatutos, sin embargo, los procuradores deberán cooperar con los Jueces del Tribunal Superior en los casos relacionados con asuntos de familia según dichos jueces dispongan. Al igual que el Fiscal de Distrito, el Procurador Especial de Relaciones de Familia no está autorizado, por su propia iniciativa, para intervenir en un caso de divorcio, a menos que el Juez de Relaciones de Familia pida su cooperación en algún aspecto que el juez le encomiende.

En el caso de autos no se trata de la intervención personal de un funcionario que, creyendo tener facultad para ello, pide que se le oiga en un litigio. Como cuestión de realidad se trata de la intervención *de una parte* en un pleito, que en este caso es el Estado Libre Asociado de Puerto Rico, y en que se pide la nulidad de una sentencia judicial que ha creado un estado de derecho a favor de un litigante. A base de *intervención de parte*, veamos la Regla 21 de las de Procedimiento Civil relativa a la intervención.

Dispone la Regla 21.1, intervención como cuestión de derecho, que mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito (a) cuando *por ley* o por estas Reglas se le confiere *un derecho incondicional* a intervenir; o (b) cuando la representación del interés del solicitante por las partes ya en litigio fuere o pudiere resultar inadecuada y el solicitante fuere o pudiere *ser afectado* por la sentencia en pleito; . . . . A la luz del anterior precepto, la intervención solicitada en este caso no procedería como cuestión de derecho.

Como una intervención permisible bajo la Regla 21.2, dispone ésta que mediante oportuna solicitud podrá permitirse a cualquier persona intervenir en un pleito: (a) cuando *por ley* se le confiere un derecho condicional a intervenir; o (b) cuando la reclamación o defensa del solicitante y el

pleito principal tuvieren en común una cuestión de hecho o de derecho.

■ Es incuestionable que en nuestra sociedad, y en las sociedades del pasado, ha existido siempre un interés público en la conservación del matrimonio, piedra angular de la familia. Nuestro Código Civil confiere al contrato matrimonial categoría de institución social. Ese interés general, no obstante, no convierte al Estado, ya en concepto procesal, ya de manera sustantiva, en parte litigiosa, *sub silentio*, en toda acción de divorcio, en ausencia de disposición de ley positiva que así lo disponga. Es un hecho histórico que bajo la Ley Común Inglesa, el Estado no tenía tal intervención como parte, y en aquellas jurisdicciones en los Estados de la Unión que interviene, lo es en virtud de ley positiva. Véase el estudio contenido en la Monografía sobre el particular que sigue al caso de *State ex rel. Fowler* v. *Moore*, 1922, 22 A.L.R. 1101, 1112 y ss., criterios éstos que no han sido modificados. El caso de *Pérez Valdivieso* v. *León*, 52 D.P.R. 512 (1938), que invoca el fiscal para intervenir, no le reconoce tal derecho.

Nuestro legislador no le ha dado al Estado intervención como parte o de otra manera en los pleitos de divorcio, a pesar de que a través del Secretario de Justicia y de los fiscales ha permitido intervención en muchas áreas que conciernen a la familia. Reconocemos la preocupación del Ministerio Público, si es que en Puerto Rico se ha creado o pueda estarse creando una situación indeseable de fraude a los tribunales, mediante alegaciones de residencia en Puerto Rico inexistentes o por período menor del requerido por ley a los efectos de obtener aquí un divorcio.

Probablemente el hecho puede ser producto en parte de la inmensa población de puertorriqueños en la ciudad de Nueva York y en otras ciudades de los Estados Unidos en donde las causales de divorcio han sido muy restrictivas.

Con la liberación reciente de las causales de divorcio del Estado de Nueva York (antes sólo procedía el divorcio por la causal de adulterio) muchos puertorriqueños tal vez no tengan que trasladarse a Puerto Rico a divorciarse.

■ Una situación general de fraude al tribunal debe ser una honda preocupación de la Administración de Justicia, tanto en la Rama Ejecutiva como en la Judicial. Los Jueces Superiores deben estar alertas contra tal tendencia, y en la vista de los casos de divorcio deben cerciorarse, mediante el interrogatorio apropiado, particularmente en los casos en rebeldía que son los más, de que existe la necesaria jurisdicción y facultad necesaria para fallar. La jurisdicción y competencia del tribunal para conocer de un asunto es la responsabilidad, en última instancia, del propio tribunal.

No hay duda que los jueces pueden pedir la cooperación de los Procuradores Especiales de Relaciones de Familia en este sentido. Y deben estar igualmente alertas los jueces para evitar que se perpetúe un estado de fraude al tribunal en estos casos, solicitando sanciones para aquellos abogados que con pleno conocimiento de que su cliente no cumple con los requisitos de residencia, radican una demanda en que alegan lo contrario, ayudando así a realizar el fraude.

■ Aparte de ello, los Fiscales de Distrito, en su función de perseguir el delito, están en libertad de procesar por perjurio a toda aquella persona que declare bajo juramento en un pleito de divorcio que ha cumplido con una residencia que no tiene, ya que este es un hecho esencial cuya falsedad afecta el procedimiento.

La intervención del Estado como parte en los pleitos de divorcio no está aquí autorizada por la ley, ni por la doctrina. Conscientes como somos de la seriedad que crea el problema de un estado común de fraude al tribunal, nos parece que corresponde al Poder Legislativo determinar si ha de darle intervención al Estado Libre Asociado en los

casos de divorcio, y en qué forma y manera, y bajo qué circunstancias.

Debía ser el Poder Legislativo en todo caso, para que haya uniformidad de norma y acción a través de todo el país, y para que no se diera el caso de que en unas Salas del Tribunal Superior el Ministerio Público intervenga en las acciones de divorcio, y en otras no, dependiendo del arbitrio de cada funcionario.

*Por los fundamentos expuestos se anula el auto de certiorari expedido.*

El Juez Asociado Señor Rigau concurrió en opinión separada.

—O—

Opinión concurrente del Juez Asociado Señor Rigau con la cual concurren los Jueces Asociados Señores Hernández Matos y Ramírez Bages.

San Juan, Puerto Rico, a 15 de abril de 1970

Concurro con el resultado de la opinión del Tribunal por entender, igual que entiende éste, que los fiscales no tienen facultad para intervenir en los casos de divorcio. Sobre ese particular, en la opinión del Tribunal, se exhorta al Poder Legislativo del país para que determine si ha de darle intervención al Estado en dichos casos. Se hace dicha exhortación, entiendo, porque se preocupa el Tribunal por alegaciones falsas de residencia en Puerto Rico que se dice o se supone que se hacen en los tribunales en esos litigios. [1]

Desde luego, no favorezco el perjurio en los casos de divorcio ni en caso alguno pero creo que al invocarse acción legislativa sobre esta materia de divorcios debe hacerse para

---

[1] El año de residencia en Puerto Rico no es necesario cuando la causa en que se funda la demanda se cometió en Puerto Rico o cuando dicha causa se cometió mientras uno de los cónyuges residía aquí. Art. 97, Código Civil; 31 L.P.R.A. sec. 331. Véanse *Mestre* v. *Pabeyón*, 84 D.P.R. 369 (1962) y *González Miranda* v. *Santiago*, 84 D.P.R. 380 (1962).

que la misma sea tratada con un sentido de mayor realismo y con más compasión y humanidad que lo que lo hace la obsoleta legislación todavía vigente. Todo proceso de divorcio es doloroso aun cuando se desee vivamente su finalidad. No creo que debemos agravar el cilicio que sufren las almas adoloridas que acuden a los tribunales en estos casos.

Nuestra legislación sobre divorcio debe ser modernizada y humanizada. En la *Memoria* de la Conferencia Judicial de Puerto Rico celebrada en diciembre de 1958 aparecen unas propuestas hechas por el Comité Sobre Relaciones de Familia y Delincuencia Juvenil que merecen ser consideradas por todos y especialmente por nuestros legisladores. Dicho Comité presentó un proyecto sobre enmiendas al Código Civil en materia de divorcio. En la Conferencia antes mencionada, el Presidente de ese Comité, el Honorable Antonio R. Barceló, hijo, entonces Juez Superior, se expresó en parte como sigue:

"El defecto principal en la actual Ley de Divorcio es que marido y mujer son litigantes adversarios; que uno debe ser declarado culpable y el otro debe ser declarado inocente; que el cónyuge culpable debe ser penalizado y el cónyuge inocente premiado. En el esfuerzo de cada uno por probar su inocencia y la culpabilidad del otro, se pierden respetabilidad y decencia y los procedimientos pueden producir penalidades desagradables. Si ambos resultan culpables, ninguno puede obtener sentencia a su favor y el matrimonio deberá continuar en toda su fuerza y vigor, no importa lo dañino que resulte para las partes, sus hijos, y la sociedad.

Una ley de divorcio debe estar orientada a promover la felicidad y no la infelicidad; a que los litigantes se conduzcan en forma amigable y no hostil; a que se mantenga la cohesión de la familia y no a que se precipite su destrucción; a que el remedio reclamado esté basado en el derecho propio y no en la culpa ajena. Cuando marido y mujer tengan que separarse permanentemente, debieran hacerlo sin las indignidades, hostilidades, dudas y agresiones que conllevan muchas de las acciones de divorcio. El bienestar de la familia, y especialmente el de los hijos, debe recibir primordial atención. Esta ley adopta

un enfoque terapéutico del divorcio, y se inspira en el principio de que las cortes deben ser instrumento de ayuda para las partes y no arena .de combate. La primera alegación de la parte promovente debe titularse 'petición' en vez de demanda y el título del caso debe ser 'In re: La Familia de ——————', en vez de 'Fulano versus Zutano'.

Veamos el contenido a largos trazos de este proyecto. Como dijimos, el remedio reclamado debe estar basado en el derecho propio y no en la culpa ajena, con el corolario de que no habría cónyuge inocente ni cónyuge culpable. Se elimina la defensa de recriminación como impedimento al remedio reclamado, de manera que desecha lo que constituye en nuestro tiempo la anomalía jurídica de que el divorcio no procede cuando ambos cónyuges tienen causa para el mismo, con la sola excepción de la que se funda en la separación.

Se agrupan las causales de divorcio considerándolas como violaciones a tres derechos y deberes fundamentales afirmativos, o sea, se le da a la ley un enfoque afirmativo en vez de negativo; o sea, los tres principios fundamentales del matrimonio: la fidelidad, el respeto y el consorcio mutuo, y se define esto. Se establecen los remedios de separación legal y separación legal limitada, con sus causales y la forma de determinar el estado de separación legal. Se consagra el principio de que el derecho al remedio solicitado esté supeditado al bienestar de los hijos y al interés del Estado. Se requiere el acto de conciliación de las partes en todos los casos en que haya hijos menores de edad. Actualmente solamente se requiere en casos de trato cruel, injurias graves y de abandono. No es extensivo a la separación. Se equipara la mujer al marido en las obligaciones de alimentos a tono con la prohibición contra discrímenes por razón de sexo contenida en el Artículo II de la Sección I de la Constitución del Estado Libre Asociado. Se da flexibilidad a las disposiciones sobre el cuido de los hijos para que la discreción del tribunal en el ejercicio de la facultad de *parens patriae* pueda dispensarse sin trabas, con miras al bienestar de los menores. Se crean nuevos remedios para la protección de los cónyuges y de sus derechos de propiedad en la sociedad de gananciales."

Han pasado más de once años y todavía no se ha tomado acción sobre esas recomendaciones de aquel Comité Sobre

Relaciones de Familia y Delincuencia Juvenil de la Conferencia Judicial. Pero hace poco, a comienzos de este año, un distinguido legislador y abogado, con valentía y sentido humano, propuso legislación para reformar la relativa a esta materia de divorcio. En su ponencia (de la cual nos ocuparemos en breve) ante las Comisiones de Gobierno y de lo Judicial de la Cámara de Representantes, en 2 de febrero de 1970, el Honorable Benny Frankie Cerezo citó los párrafos que más adelante transcribimos del escritor y abogado puertorriqueño Nemesio R. Canales. Incluimos dichos párrafos a pesar del tono humorístico en que están escritos porque detrás de esa fina pantalla de humorismo se advierte la compasión humana que entrañan. Creemos que por eso también los incluyó el mencionado legislador en su ponencia. Nemesio Canales, luego de criticar la disposición de ley que prohíbe que se conceda el divorcio cuando las partes están de acuerdo en solicitarlo, escribió lo siguiente:

"Usted, señor mío, encontrará abiertas de par en par las puertas de una corte de justicia para solicitar y obtener la disolución del vínculo matrimonial, siempre que usted pueda alegar y probar a la faz de todo el mundo en juicio oral y público, que entre usted y su mujer ha ocurrido cualquiera de las ocho cosas espantosas que señala el código como motivo de divorcio.

Cualquiera de esas ocho cosas (eran 8 entonces)—adulterio, embriaguez habitual, trato cruel, etcétera—bien probadita, esto es, bien sacadita a la vergüenza pública, bien puesta de manifiesto una vez y otra vez ante los ojos curiosos del público, en los estrados de una corte, le dará a usted derecho a la sentencia de divorcio que desea. Pero, eso sí, tiene que haber lucha; tiene que haber una riña judicial en que ambos cónyuges se saquen los trapos al sol y traten de cubrirse del mayor oprobio posible; tiene que haber uno que quiera salir de la jaula conyugal y otro que le cierre el paso a todo trance; tiene que haber uno que diga sí y otro que grite no. Porque si tiene usted la desdicha de llegar pacíficamente, sin necesidad de escándalo, a un acuerdo o convenio mediante el cual ambos se declaren

incapacitados para seguir la vida en común .... ¡ya se ha fastidiado usted, y no hay divorcio!

Quiere decir amigo mío, que la Ley le dice a usted: 'Siempre que tú hayas inferido o sufrido una o más de las ocho cosas espantables, y pidas o te pidan judicialmente el divorcio, está bien; yo lo concederé después de la averiguación y el escándalo consiguientes.'

Pero si yo llego a averiguar que ustedes—los dos—en vista de las circunstancias, han tenido la sensatez de estar de acuerdo en lo tocante a la imposibilidad de seguir atados, y han convenido en gestionar, de la manera más breve, económica y discreta, el divorcio, ¡entonces sí que les reviento, condenándoles a seguir arrastrando, por los siglos, la cadena!" (²)

En su citada ponencia de febrero de este año el legislador Señor Cerezo se expresa en parte como sigue:

"Bastaría la consideración superficial de cualquier ciudadano sobre la situación imperante en nuestros tribunales en relación con las acciones de divorcio, para darse cuenta de la imperiosa necesidad que existe de ajustar las normas jurídicas sobre esa materia a la realidad social en que nos toca vivir.

Hasta el presente, nuestro sistema legal ha bregado con la disolución del matrimonio prácticamente en la misma forma en que brega con acciones de daños y perjuicios o el incumplimiento de cualquier contrato. Esto es, a base de un procedimiento contencioso en que ambas partes someten evidencia para sostener una serie de alegaciones.

Las causales que ofrece nuestro Código Civil como medio para disolver el vínculo que une a un hombre y a una mujer parten de la base de que un cónyuge ha sido ofendido por su compañero en determinadas áreas de conducta predeterminada por ley. Sin embargo, la consideración primaria en una acción de esta naturaleza no debía ser lo que una persona le hizo a otra, sino si el vínculo de afecto que unió a dos personas está irremediablemente roto, irrevocablemente muerto. El procedimiento de disolución de un matrimonio debía, pues, ser más en la naturaleza de una investigación que de un juicio. . . .

Estoy propulsando vigorosamente una medida que crea la causal de consentimiento de ambos cónyuges o 'consentimiento

---

(²)*Paliques*, ed. Editorial Univ. de P.R. (1952) pág. 173.

mutuo' para el divorcio y que elimina el concepto de culpa en esta causal y en la de separación por tres años. . . .

Durante muchos años he sido testigo, como lo han sido todos ustedes, de las farsas que diariamente se presentan en nuestros tribunales en el esfuerzo que hacen los cónyuges envueltos en una acción de divorcio y el juez que ve el caso, para adaptar a este problema las salidas que la ley ha provisto. . . .

Haciendo más sinceros los procedimientos de divorcio y ajustándolos a la realidad no menoscabamos la importancia del matrimonio. La base de la estabilidad en el hogar no es el matrimonio como institución civil o como decreto jurídico o eclesiástico. La base de la estabilidad en el matrimonio es el amor, la comprensión, la tolerancia y el respeto mutuo entre los cónyuges. Por lo tanto, lo primordial en el matrimonio no es su invulnerabilidad como contrato.

Si una pareja de casados, luego de un intento serio para armonizar sus relaciones, encuentra que ya es imposible la vida conyugal, que viven espiritualmente divorciados ¿por qué seguir fingiendo? Tal vez podrían disolver ese matrimonio dentro de un clima armonioso, pero conforme a nuestro Código, tienen por obligación que recurrir a un procedimiento contencioso donde se enfrentan y consagran como enemigos. La ley les prohibe expresamente ponerse de acuerdo para terminar una relación cuya única razón de ser ya no existe. La idea es que al escuchar las alegaciones de ambas partes, y el testimonio de testigos que casi nunca saben de que se trata, pues los hechos ocurren por lo general en la intimidad del hogar—el tribunal tenga elementos de juicio suficientes para determinar cuál es el cónyuge culpable y cuál el inocente.

Sin embargo, esa misma ley que demanda 'culpa' en una de las partes y 'manos limpias' en la otra, acepta la recriminación como defensa y permite que en una demanda no contestada, una sola de las partes presente evidencia para establecer los hechos que han dado lugar a la causal. Y todos sabemos que existen razones, muchas de ellas ajenas a la culpa, por las cuales un cónyuge prefiere no contestar una demanda de divorcio y ser considerado por ello culpable, antes que enfrentarse públicamente a un proceso judicial de esta naturaleza.

El concepto de 'consentimiento mutuo' brega con el divorcio dando a las partes la oportunidad de resolver sus diferencias

en un ambiente de relativa armonía dentro de una situación irreconciliable. En la causal, así como en la de separación por tres años, se borra el concepto de la culpa.

Este concepto, que, como hemos dicho, es el producto del sistema de adversario, requiere el testimonio de las partes. Este testimonio puede hacerse agrio y dañino y deja, por lo general, grandes residuos de hostilidad entre los divorciados, afectando seriamente los hijos, que en virtud de esos testimonios, asumen actitudes en favor o en contra de sus padres. . . .

Lo importante, pues—no es salvar un matrimonio que ya está destruido. Eso lo único que traería consigo sería una mayor desorientación en la familia. No puede ser feliz un niño que vive con padres que se están recriminando constantemente; no puede crecer con la idea de que el matrimonio es bueno un joven que vive en una atmósfera de desprecio y de odio.

Lo importante es que, a pesar de que dos personas hayan en alguna forma violentado la relación que los unía—pueda salvarse la vida de los hijos reorientándola hacia un nuevo tipo de relación paternal que permita un entendimiento de los factores humanos que han traído la separación. . . .

Creemos que el proyecto que hemos radicado representa un paso de avance en esa dirección. En primer lugar, se elimina el concepto de culpa en la causal de separación por tres años. Si lo único que hay que probar al tribunal es el hecho objetivo de la separación, no existe razón por la cual una parte sea señalada con una culpa que ni siquiera ha sido establecida.

En segundo lugar—repetimos—se adiciona la causal de 'consentimiento mutuo.' Se ha dicho que esta causal constituye una puerta abierta al divorcio. Nada más lejos de la verdad. Los que sostienen esto, no han leído con cuidado el proyecto de ley radicado. La causal no es fácil. Me parece a mí que es la más difícil y la que garantiza con más seguridad el bienestar de los hijos.

En primer lugar, exige que los esposos estén de acuerdo. Basta que uno de ellos se niegue para que no exista esta causal. Además, debe ofrecerse al tribunal evidencia de primera clase de que se han tomado las medidas necesarias para salvaguardar el bienestar de los hijos. Esto incluye alojamiento, alimentos, custodia, potestad y otras relaciones—todo ello desde luego, de conformidad con el estado económico de los padres.

En adición, desde la presentación de la demanda deben transcurrir seis meses para que el divorcio sea declarado—término que da lugar a una posible reconciliación. . . .

Este clamor por humanizar y acercar a la realidad los procedimientos de divorcio ha hallado eco en otras jurisdicciones. En algunas han ido mucho más lejos de lo que nosotros intentamos."

Hemos citado los anteriores tres autores porque hacen planteamientos sinceros y bien intencionados. Los pronunciamientos citados son, creemos, representativos de ese "clamor por humanizar y acercar a la realidad los procedimientos de divorcio" que se advierte en todas partes. No hemos pretendido ofrecer aquí soluciones finales pero creemos, como dijimos antes, que si el poder legislativo ha de tomar acción sobre esta materia debe ser para modernizarla y humanizarla, no para hacerla más despiadada.