El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
El recurso de autos nos permite aclarar si existe en nuestro ordenamiento jurídico la causal de ruptura irreparable a la luz de lo resuelto en Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978) (Figueroa Ferrer). A dicha interrogante respondemos que no.
I
La Sra. Yuserdy Salvá Santiago (señora Salvá Santiago o peticionaria) presentó una demanda de divorcio por ruptura irreparable contra su esposo, el Sr. Jason Torres Padró.(1) Antes de que el señor Torres Padró fuera emplazado, el tribunal de instancia desestimó la demanda sin perjuicio. Concluyó que, conforme a lo resuelto en Figueroa Ferrer, en Puerto Rico se puede presentar una solicitud de divorcio por la causal de ruptura irreparable, pero que ésta se tiene que dar en el contexto de un proceso no adversativo donde medie una petición conjunta suscrita por ambos cónyuges.(2)
Insatisfecha con el dictamen, la señora Salvá Santiago acudió ante el Tribunal de Apelaciones, el cual confirmó la determinación. La señora Salvá Santiago acude ante este Tribunal por entender que erraron ambos foros al concluir que el divorcio por ruptura irreparable se puede dar sólo en el contexto de un proceso no contencioso. Sostiene, por el contrario, que la causal de ruptura irreparable se puede tramitar de forma adversativa y que no reconocerlo así violenta su derecho a la intimidad.
Al resolver la controversia de autos tomamos conocimiento judicial de que algunos paneles del Tribunal de Apelaciones han validado decretos de divorcio por ruptura *337 irreparable en procesos adversativos, mientras que otros se han negado a validar esta causal.(3) Por la importancia de esta controversia y con el propósito de pautar el derecho aplicable, expedimos el recurso solicitado y procedemos a resolverlo en sus méritos.
II
A. Hace casi tres décadas resolvimos en Figueroa Ferrer que el derecho constitucional a la intimidad per-mite a los ciudadanos divorciarse por consentimiento mutuo sin tener que expresar las razones de su determinación. En esa ocasión, expresamente declaramos inconstitucional la disposición del Art. 97 del Código Civil, 31 L.P.R.A. sec. 331, que prohibía el acuerdo entre los cónyuges para divorciarse por violar las Secs. 1 y 8 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. Allí nos planteamos si, en aras de conferir el respeto debido a la dignidad e intimidad del ser humano y a la propia integridad de los procesos judiciales, se debía reconocer formalmente la realidad de que muchas parejas se divorciaban mediante causales contenciosas simulando adversidad aun cuando ya existía un acuerdo entre ellos. Figueroa Ferrer, pág. 271. Conforme a ese análisis, sostuvimos que el Estado no puede obligar a dos seres humanos a permanecer atados cuando ambos reconocen *338 que la convivencia se ha hecho imposible porque el vínculo entre ellos está irremediablemente disuelto. íd., pág. 275.
Por otra parte, establecimos que no se aceptaría petición alguna de divorcio bajo estos principios sin que las partes incluyeran las estipulaciones correspondientes sobre la división de sus bienes, el sustento de las partes y otras consecuencias del divorcio. Figueroa Ferrer, pág. 277. Más aún, en vista del carácter obligatorio que le conferimos al consenso entre los cónyuges, dispusimos que si dentro de treinta días a partir de la sentencia de divorcio alguna de las partes retiraba su aceptación, se dejaría sin efecto la determinación. íd. Véase, además, Guías para Uniformar el Procedimiento de Divorcio por Consentimiento Mutuo, Conferencia Judicial de Puerto Rico, mayo 1988, pág. 39. De esta forma, nos aseguramos que hasta el último momento la decisión tomada fuese consensual y que solamente adviniera final y firme el divorcio si ambos mantenían su decisión de disolver el matrimonio.
Así, al amparo de nuestro ordenamiento constitucional en Figueroa Ferrer acogimos la normativa prevaleciente en otras jurisdicciones de permitir el divorcio consensual. Para llegar a ese resultado, hicimos un extenso análisis del estado de derecho vigente tanto en Europa como en los Estados Unidos y concluimos que en la mayoría de las jurisdicciones la tendencia era hacia el divorcio no culposo de naturaleza consensual.
De hecho, en esa decisión —y al amparo del análisis de derecho comparado realizado— reconocimos que, aunque la ruptura irreparable a veces se tramitaba de forma adversativa, lo que muchas veces había detrás de ella era un consenso entre los cónyuges sobre el quebrantamiento insalvable del vínculo matrimonial. Figueroa Ferrer, pág. 265.
En dicha opinión también expresamos que muchas veces la introducción del concepto de ruptura irreparable constituyó una aceptación sutil del consentimiento mutuo como método para la disolución del matrimonio. Figueroa *339 Ferrer, pág. 265. Indicamos que Suecia era ejemplo de ello, ya que allí la demostración de la ruptura irreparable era un requisito del divorcio por consentimiento. Id., pág. 268. También expresamos que Francia contemplaba dos causales de divorcio sin contenido de culpa, a saber, el consentimiento mutuo y la ruptura irreparable. Id., pág. 269. No obstante, sólo abundamos en los rasgos del divorcio por consentimiento, precisamente porque en ese país se trataba de dos causales distintas.
Además, en esa decisión enunciamos la existencia de una tendencia general a reconocer el divorcio no culposo mediante la institución de la causal de ruptura irreparable o la de consentimiento mutuo. Sostuvimos que, en ambos casos, la mayoría de las jurisdicciones intentaba escudar a las partes de la necesidad de depender de causales culposas, así como de ventilar su vida íntima ante los tribunales. Figueroa Ferrer.
Tal como surge del recuento anterior, la mayor parte de las ocasiones en que nos referimos al concepto de ruptura irreparable en Figueroa Ferrer lo hicimos en función del estudio de la evolución del divorcio culposo al divorcio sin culpa, y para ejemplificar que la tendencia mayoritaria en el mundo era hacia el reconocimiento del divorcio consensual cuando las parejas acordaban que diferencias irreconciliables habían ocasionado la ruptura irreparable del vínculo matrimonial. De la normativa allí estudiada se desprende, además, que en ocasiones detrás de un proceso adversativo por ruptura irreparable, lo que existía era un consenso entre los cónyuges sobre la alegada ruptura y que, en otras instancias, la demostración de la ruptura irreparable era necesaria para lograr el divorcio por consentimiento. Dada la relación que con alguna frecuencia observamos entre ambas causales —a nivel práctico y probatorio— y, en vista de la existencia de una modalidad consensual del divorcio por ruptura irreparable, afirmamos, a modo de conclusión, que “[l]a Constitución del Estado Libre Asociado ampara el derecho de los puer *340 torriqueños a proteger su dignidad y vida íntima en los procedimientos de divorcio mediante la expresión de la mutua decisión de divorciarse o la consignación de ruptura irreparable de los nexos de convivencia matrimoniar. (Enfasis suplido.) Figueroa Ferrer, pág. 276.
De hecho, también en la actualidad algunos estados de Estados Unidos poseen un esquema consensual para tramitar el divorcio por ruptura irreparable. La mayoría de los estados que han optado por este concepto, han acogido en sus estatutos el proceso propuesto en la ley uniforme conocida como el Uniform Marriage and Divorce Act, 9A Uniform Laws Annotated, Secs. 101-309. Véase, por ejemplo, Arz. Rev. Stat. Sec. 25-316 y Colo. Rev. Stat. Ann. Sec. 14-10-110. El estatuto uniforme establece la ruptura irreparable como única base para el divorcio y provee para que se haga por mutuo acuerdo. No obstante, en aquellos casos en que no hay acuerdo, el tribunal debe examinar los factores relevantes para determinar si el matrimonio está irremediablemente disuelto. 9A Uniform Laws Annotated, Sec. 305. Incluso, algunos estados han ido más allá y han establecido que la única forma de obtener un divorcio por ruptura irreparable es mediante un acuerdo entre los cónyuges. Véase, por ejemplo, Tenn. Code Ann. Sec. 36-4-103 y W. Va. Code Ann. Sec. 48-5-201.
Partiendo del análisis expuesto, y tomando en cuenta el estudio comparado que hicimos en Figueroa Ferrer, resolvemos que cuando en esa decisión mencionamos la ruptura irreparable como posible medio de disolución matrimonial, lo que hicimos fue acoger la modalidad consensual de dicha causal para hacerla formar parte del divorcio por consentimiento mutuo. Por lo tanto, coincidimos con el tratadista Raúl Serrano Geyls en cuanto sostiene que “[l]a causa no culposa de ruptura irreparable no existe en P[uerto] R[ico] ...”. R. Serrano Geyls, Derecho de familia de Puerto Rico y legislación comparada, San Juan, Programa de Educación Jurídica Continua de la U.I.P.R., Vol. I, 1997, pág. 619. Más bien, lo que adoptamos en Figueroa *341 Ferrer fue la causal de consentimiento mutuo, pero reconocimos que cuando ambos cónyuges aceptan y consignan la ruptura irreparable del matrimonio, estamos ante una modalidad del divorcio por consentimiento mutuo y, por lo tanto, en esos casos se puede tramitar el divorcio conforme al procedimiento establecido en Figueroa Ferrer.
Esto significa que el proceso de consentimiento mutuo se puede dar en dos contextos: (1) cuando ambos cónyuges expresan el interés mutuo de disolver el matrimonio, o (2) cuando ambos cónyuges consienten en divorciarse y sólo exponen como causa la existencia de una ruptura irreparable en el vínculo matrimonial. Ahora bien, en ambas modalidades (consentimiento mutuo mediante la expresión de la mutua decisión de divorciarse o consentimiento mutuo mediante la consignación de la existencia de una ruptura irreparable del vínculo matrimonial) hay que cumplir con los requisitos formales establecidos en Figueroa Ferrer, a saber, la presentación de una petición con-junta juramentada donde se solicite el divorcio y que incluya las estipulaciones sobre las consecuencias de éste.
Conforme a lo anterior, no podemos acceder al pedido de la peticionaria, en cuanto nos invita a resolver que en Figueroa Ferrer adoptamos, además del consentimiento mutuo, una modalidad no consensual del divorcio por ruptura irreparable. Como vimos antes, la opinión emitida en Figueroa Ferrer está cimentada en la presencia del consenso entre los cónyuges. Todos y cada uno de los rasgos del proceso que allí establecimos gira en torno al reclamo de unos cónyuges que deseaban divorciarse por mutuo acuerdo sin tener que revelar los detalles de su vida íntima al fingir una disputa que no existía, lacerando —además— la dignidad del tribunal. Si tomamos en cuenta esos detalles, constituiría un contrasentido sostener que en Figueroa Ferrer también reconocimos una causal de índole adversativa cuando el proceso que establecimos en la opinión implica y requiere consenso entre los cónyuges. Más aún, afirmar tal cosa implicaría menospreciar el texto mismo de la opinión *342 y sostener que este Tribunal —a fin de cuentas— adoptó dos causales pero reguló solamente una de ellas.
B. Por otro lado, si acogiéramos la postura de la peticionaria tendríamos que afirmar que en Figueroa Ferrer este Tribunal adoptó dos modalidades de divorcio con rasgos absolutamente contrapuestos que ponen en riesgo las protecciones que allí quisimos conceder. Si bien la peticionaria alega que no reconocer la ruptura irreparable como causal adversativa violentaría su derecho a la intimidad porque no desea divulgar las razones de su decisión, lo cierto es que reconoce que la parte adversa tendría derecho a expresar si, en efecto, el matrimonio está irremediablemente disuelto. Por lo tanto, en el proceso que ésta invoca al amparo del concepto de ruptura irreparable median partes adversas. Bajo ese esquema, sus alegaciones admitirían contestación, y la parte contraria tendría derecho a presentar prueba a su favor para apoyar o desvanecer la teoría de que existe un rompimiento irreparable en el vínculo matrimonial. Si así fuera, si accediéramos a las pretensiones de la peticionaria añadiríamos una nueva causal contenciosa que requeriría la divulgación de detalles del rompimiento matrimonial, so pretexto de que se pruebe la existencia de una ruptura irreparable. Ello, sin duda, afectaría su propósito de evitar la divulgación de las razones que la mueven a solicitar el divorcio.
Ahora bien, el hecho de que el proceso solicitado por la peticionaria no evite necesariamente la divulgación de las razones del rompimiento, no significa que debamos adoptar el criterio expuesto en las opiniones disidentes, en cuanto a que la petición unilateral de un cónyuge debe ser suficiente para lograr un decreto de divorcio. Por el contrario, estimamos que tal proceder sería contrario a los rasgos que distinguen la institución del matrimonio y atentarían contra las garantías mínimas requeridas por el debido proceso de ley.
Sabido es que el debido proceso de ley, en su vertiente procesal, le garantiza al ciudadano que la inter *343 ferencia con sus intereses de libertad y propiedad se harán a través de un procedimiento justo y equitativo. Hernández v. Secretario, 164 D.P.R. 390 (2005); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881 (1993). Entre los requisitos que todo proceso adversativo debe garantizar para satisfacer las exigencias del debido proceso se encuentran, precisamente, la oportunidad de ser oído, el derecho a contrainterrogar y el derecho a examinar la evidencia presentada por la parte contraria. Rosario Rosario & Assoc. v. Depto. Familia, 157 D.P.R. 306 (2002); Rivera Rodríguez & Co. v. Lee Stowell, etc., supra; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987).
No obstante lo anterior, los criterios expuestos en las opiniones disidentes —en aras de vindicar el derecho a la intimidad de uno de los cónyuges— desatienden el derecho también constitucional del otro cónyuge a que la interferencia con sus intereses libertarios y propietarios se haga a través de un debido proceso de ley. En la medida en que adoptarían el concepto de ruptura irreparable como una modalidad de divorcio unilateral, ignoran —entre otras cosas— la normativa constitucional de conceder a la otra parte su derecho a ser oído.
De otra parte, no compartimos los criterios expuestos en las referidas opiniones en cuanto a que el Estado no se puede inmiscuir en la decisión de un cónyuge de divorciarse unilateralmente. Contrario a esa posición, en la propia opinión emitida en Figueroa Ferrer (después de declarar inconstitucional la disposición del Código Civil que le impedía a los cónyuges llegar a un acuerdo para lograr un divorcio), aclaramos que “[n]ada de lo anterior significa que el divorcio es asunto exclusivo de las partes, sujeto a su puro capricho y antojo”. (Enfasis suplido.) Figueroa Ferrer, pág. 276. En vista de ello, reconocimos que no era posible dejar la determinación y el trámite del divorcio al albedrío y voluntad de las partes. Más bien, al así resolver, partimos de la premisa de que los tribunales tendrían un rol activo en tales procedimientos.
*344 Ello responde, sin duda, a los rasgos mismos que se le han conferido a la institución del matrimonio. En nuestro ordenamiento, el matrimonio proviene de un acto solemne de naturaleza consensual que requiere el cumplimiento de determinadas formalidades. Art. 68 del Código Civil, 31 L.P.R.A. sec. 221. Éste se define como “una institución civil que procede de un contrato en virtud del cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, y a cumplir el uno para con el otro los deberes que la ley les impone”. (Énfasis suplido.) íd. Es decir, el matrimonio supone la existencia de una serie de obligaciones recíprocas que tienen su origen en el carácter contractual de la figura. Al momento de contraer dicho compromiso, ambos decidieron voluntariamente unir sus vidas en la búsqueda de un camino común. Por lo tanto, el matrimonio y su ulterior disolución no pueden quedar al arbitrio de un solo cónyuge.
En conformidad con esta normativa, nuestro ordenamiento ha establecido que, una vez contraído el matrimonio, éste sólo puede ser disuelto de la manera y en los casos específicos reconocidos por la ley y la jurisprudencia. Cosme v. Marchand, 121 D.P.R. 225 (1988).
Más aún, hemos expresado que el matrimonio es la base de la familia y que, por lo tanto, constituye el eje central de la sociedad. Cónsono con ello, hemos reconocido que en nuestra sociedad existe un interés público en la conservación del matrimonio. Pueblo v. Tribunal Superior, 99 D.P.R. 30 (1970). Por lo tanto, debe quedar claro que la protección de la unión matrimonial, en efecto, constituye un interés apremiante del Estado. Almodóvar v. Méndez Román, 125 D.P.R. 218 (1990). Es por eso que no podemos evaluar livianamente las rutas para su disolución. Por el contrario, su carácter de institución solemne y fundamental justifica que el Estado imponga requisitos y salvaguardas para regular el paso que llevará a su disolución.
En vista de todo lo anterior, no compartimos las posturas expuestas en las opiniones disidentes. Tal como surge *345 del análisis anterior, éstas son contrarias a la legislación aplicable que requiere que se pruebe una causa reconocida para disolver el matrimonio y contravienen, además, el requisito legal de que sea el tribunal el que decida si procede decretar la disolución solicitada.
A fin de cuentas, endosar sus posiciones implicaría la adopción de un divorcio instantáneo que tendría efectos jurídicos tan pronto un cónyuge presente la demanda, a pesar de que nuestro ordenamiento requiere el cumplimiento con ciertos requisitos. Más aún, esto conllevaría darle efecto inmediato a una petición de divorcio unilateral sin darle al otro cónyuge el derecho a ser oído que garantiza el debido proceso de ley. Definitivamente, no podemos avalar todo ese automatismo que no armoniza con el carácter contractual, solemne y fundamental del matrimonio.
III
Finalmente, debemos señalar que el esquema contemplado en Figueroa Ferrer —aclarado en algunos ex-tremos en esta ocasión— no impide que una acción de divorcio iniciada al amparo de una causal contenciosa pueda ser encauzada bajo el proceso de consentimiento mutuo. En esos casos, cuando se presenta una demanda bajo cualquiera de las causales establecidas en el Código Civil, y luego las partes se ponen de acuerdo, no es necesario desestimar la demanda para volver a iniciar el trámite mediante una petición conjunta. Más bien, se le debe conceder una oportunidad a los cónyuges para que enmienden los escritos, de manera que cumplan con las formalidades establecidas en Figueroa Ferrer. Es decir, en tales casos se le debe conceder un término a las partes para que suscriban una petición conjunta donde se incluyan los acuerdos sobre las consecuencias del divorcio.
Por otro lado, en casos como el de autos, donde lo que se invoca para sostener la demanda de divorcio es una causal inexistente en nuestro ordenamiento, procede permitir que ésta se enmiende para invocar una causal reconocida. Sólo *346 si el cónyuge demandante se niega a enmendar la demanda al amparo de una causal reconocida, procederá desestimarla.
Con esto en mente, pasamos a disponer concretamente del caso ante nuestra consideración.
IV
Al aplicar las normas expuestas al caso de autos, resulta forzoso concluir que la peticionaria, señora Salvá Santiago, no podía tramitar su demanda de divorcio al amparo de la causal de ruptura irreparable, porque ésta no fue adoptada propiamente en Figueroa Ferrer ni mediante legislación. Dicho precedente incorporó el concepto de ruptura irreparable a nuestro sistema de divorcio, únicamente, como modalidad de la causal de consentimiento mutuo en los casos en que hay acuerdo entre los cónyuges sobre la alegada ruptura irreparable y así desean expresarlo. Sin embargo, como hemos indicado, en tales instancias también se tienen que cumplir los requisitos for-males establecidos en Figueroa Ferrer, los cuales están basados en la presencia de consenso entre los cónyuges, por lo que se requiere la presentación de una petición conjunta donde se incluyan los acuerdos sobre las consecuencias del divorcio.
Ahora bien, según hemos señalado, el tribunal en este caso no debió desestimar la demanda presentada por la señora Salvá Santiago. Más bien, debió permitirle enmendar el escrito para que invocara una causal reconocida en nuestro ordenamiento y, si ésta se negaba a hacerlo, entonces procedía la desestimación.

Finalmente, conviene aclarar que mediante este dicta-men no invalidamos las sentencias emitidas por ruptura irreparable que hayan advenido finales y firmes. Ello en vista de que son dictámenes emitidos por tribunales con jurisdicción y competencia que se han fundamentado en un error de derecho y que, por ende, no están viciados de nulidad.

*347 V
Por los fundamentos expuestos, revocamos la sentencia del Tribunal de Apelaciones y, en consecuencia, la del Tribunal de Primera Instancia, en cuanto desestimó la demanda presentada por la peticionaria al amparo de una causal inexistente, cuando lo que procedía era permitir la enmienda del escrito para invocar una de las causales reconocidas en nuestro ordenamiento. En vista de ello, se devuelve el caso al tribunal de instancia para que proceda conforme lo señalado.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad. Las Juezas Asociadas Señoras Fiol Matta y Rodríguez Rodríguez disintieron con opiniones escritas.
Opinión de conformidad emitida por el
Juez Asociado Señor Fuster Berlingeri.
En general, estoy conforme con la opinión del Tribunal en el caso de autos. Por las razones allí señaladas, comparto el criterio de que en nuestro ordenamiento jurídico no existe como causal no culposa de divorcio la modalidad no consensual de ruptura irreparable del vínculo matrimonial.
No obstante, he creído menester añadir algo más a lo que se expresa en la opinión mayoritaria, relativo a los límites de la fundamental libertad a la autonomía personal. Nuestra Constitución no reconoce expresamente un derecho a la personalidad o el derecho a la libertad personal como tal, pero no cabe duda de que en el entramado de nuestra abarcadora Carta de Derechos se encuentra una amplia protección a la autonomía de las personas para tomar decisiones sobre su vida íntima o personal. Tal *348 autonomía personal, sin embargo, como todos los derechos fundamentales, no es absoluta. Está sujeta a límites que se originan en la exigencia radical de toda Carta de Derechos de proteger igualmente las libertades de cada cual; es decir, de salvaguardar los derechos de los demás.
La autonomía personal se ejerce de ordinario de la forma más cabal precisamente cuando un ser humano decide vincularse a otro en matrimonio, con los privilegios y las responsabilidades que ello apareja. El lazo conyugal auténtico supone una decisión de cada uno de los esposos de hacer una vida común, procurando en tal afán la plenitud de la vida propia. Pero entonces el desarrollo personal integral se transforma en una búsqueda común en la que cada uno de los cónyuges empeña su autonomía personal en el logro del desarrollo integral del otro. Por ello, la esencia del vínculo matrimonial es la reciprocidad.
Claro está, el proyecto de vida común no es fácil de plasmar, y con frecuencia resulta en un fracaso. En ese momento, sin embargo, al surgir lo que parece ser una ruptura irreparable, todavía persiste moral y jurídicamente el esencial voto de reciprocidad, prestado al casarse. Por ello, la decisión de disolver el vínculo matrimonial tiene que ser necesariamente de ambos cónyuges, si es que ha de tener algún viso de legitimidad. Así como el lazo matrimonial surgió de modo consustancial de la decisión de las dos personas en el vínculo, su terminación debe ser producto también de la decisión de ambos, salvo que medie culpa o requerimiento legal. De otro modo se pone en grave riesgo el elemento esencial de la reciprocidad, que es como poner en riesgo la posibilidad misma del matrimonio como institución social.
En resumen, pues, lo que se creó sólo por la concurrencia de dos autonomías de voluntad, sólo puede resolverse del mismo modo. En un ámbito constituido por la reciprocidad no cabe la disolución unilateral. El divorcio por ruptura irreparable sólo procede cuando las dos personas involucradas coinciden en que tal ruptura ha ocurrido. De otro modo, la pretensión de disolver el vínculo unilateral *349 mente es injusta y violatoria de la autonomía de la otra persona.

 Junto con la demanda de divorcio, la señora Salvá Santiago presentó una moción de alimentos pendente lite y honorarios de abogado, sobre la cual no habremos de expresarnos porque carecemos de detalles para disponer de ésta.

 Posteriormente, el tribunal emitió una resolución declarando académica la solicitud de alimentos pendente lite y de honorarios de abogado.

 Así, por ejemplo, el Tribunal de Apelaciones ha validado decretos de divorcio por ruptura irreparable en procesos adversativos en los casos siguientes: Arias Briceño v. Esusy Esusy, KLAN-2004-274 (Panel de la Región Judicial de San Juan); Díaz Denis v. Fernández Aponte, KLAN-2004-559 (Panel de la Región Judicial de Caguas); Moreno Rivera v. Rivera Ramírez, KLAN-2004-717 (Panel de la Región Judicial de Mayagüez); Pérez Soto v. López Acevedo, KLAN-2002-681 (Panel de la Región Judicial de Aguadilla). Por el contrario, otros paneles se han negado a sostener decretos de divorcio bajo dicha causal cuando no se ha cumplido con los requisitos del proceso de consentimiento mutuo. No obstante, incluso estos paneles entienden que en Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978) (Figueroa Ferrer), reconocimos dos causales independientes, pero que a ambas les aplica el proceso allí establecido. Así ocurrió, por ejemplo, en los casos Planadeball Rosario v. Viera Rodríguez, KLCE-2005-215 (Panel de la Región Judicial de Carolina); Santiago López v. Hernández Morales, KLAN-2005-1421 (Panel de la Región Judicial de Carolina), y Ramírez Hernández v. JiménezRíos, KLAN-2004-1144 (Panel de la Región Judicial de San Juan).