Juana María Robles López, en representación de su hija Sharon Lis Robles, demandante y recurrente, *v.* José Antonio Guevárez Santos y Edwin J. Figueroa, demandados y recurridos.

*Número:* R-80-5    *Resuelto:* 11 de abril de 1980

*Ana Violeta Ortiz, Carlos R. González Rivera, Héctor M. López González, Rubén Auger Marchand, Emmalind García García, Marista Juliá Ramos,* abogados de Servicios Legales de Puerto

Rico, Inc., y de la recurrente; *David O. Colón O'Neill, Alfredo Castro Mesa, Delwin Vélez Santiago,* abogados del codemandado José Antonio Guevárez Santos.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

La niña Sharon Lis Robles nació el 6 agosto, 1978 hija de Juana María Robles cuyo matrimonio con Edwin J. Figueroa se había disuelto por divorcio tres meses antes, el 5 mayo, 1978. Como la niña necesitaba alimentos su señora madre los reclamó no a su ex-cónyuge, sino a José Antonio Guevárez a quien ella imputa la paternidad de su hija. El 18 septiembre, 1978 juró denuncia contra Guevárez ante el Tribunal de Distrito, Sala de Bayamón, por infracción del Art. 158 del Código Penal, 33 L.P.R.A. sec. 4241, por incumplimiento de la obligación alimenticia. La denuncia fue desestimada por no haberse suplido el pliego de especificaciones solicitado por la defensa, Regla 64(d) de Procedimiento Criminal. Formulada una segunda denuncia por la madre, también terminó en sentencia desestimatoria, esta vez dándose como fundamento que la denuncia no imputaba un delito (Regla 64(a)). Esta segunda derrota técnica de la reclamación alimenticia sobrevino después de haber el ministerio público contestado la solicitud de particulares de la defensa, y ofrecido datos sobre nacimiento de la menor y divorcio de la madre denunciante que enfilaron la contienda hacia el campo reglado de impugnación de la legitimidad.

En este punto la corporación Servicios Legales de Puerto Rico inició la acción filiatoria con solicitud de alimentos ante el Tribunal Superior, formulada mediante demanda enmendada en la que la madre comparece en representación de y para beneficio de su hija menor de edad. Por tercera vez frustrada la reclamación de Sharon Lis al desestimarse la demanda aduciéndose como fundamentos de derecho por el juez sentenciador la presunción declarada en el Art. 113 del Código Civil, 31 L.P.R.A. sec. 461, de ser legítimos los hijos nacidos después de los 180 días siguientes al de la celebración

del matrimonio y antes de los 300 días siguientes a su disolución; la regla del Art. 116 (31 L.P.R.A. sec. 464) que reconoce personalidad jurídica para impugnar la legitimidad solamente al marido y a sus herederos; y nuestras decisiones en *Pueblo* v. *Santiago,* 70 D.P.R. 837, 840 (1950) y *Pérez* v. *Tribl. Superior,* 81 D.P.R. 832, 843 (1960).

Al recurso de revisión de la madre, el 31 enero, 1980 expedimos la siguiente resolución:

"La parte demandada y recurrida tendrá un término hasta el día 22 febrero, 1980 para comparecer a mostrar causa por la que no deba revocarse la sentencia de la Sala de Bayamón y ordenar la continuación de la acción civil sobre impugnación de legitimidad como promovida por la menor interesada asistida en sus medios por la persona a quien corresponda su representación."

El escrito-contestación del recurrido Guevárez se aferra a una arcaica noción de política pública que en protección de la institución familiar sofocaba la investigación de la paternidad. Su teoría de que en todo caso el hijo confrontado con una presunción de legitimidad debe posponer la acción para impugnarla hasta que alcance la mayoridad simplemente deroga la obligación alimenticia.

El azaroso curso de este caso por las salas de justicia nos recuerda que todavía quedan conceptos substantivos y barreras procesales que oponen la pátina de su historia al torrente impulsador de los derechos del hombre que enriquece la civilización contemporánea. La dificultad hasta ahora en abrir nuestras cortes a un juicio pleno en los méritos a esta acción de paternidad y alimentos se remonta a una aparente inconsistencia de doctrina resultante de la progresiva evolución y avance del principio de la igualdad de los hijos, superando unos criterios históricos que identificaban al superior interés social en la integridad de la familia con la restricción de la impugnación de la paternidad legítima. [1] Habíamos avanzado considerablemente en la ruta de abolir el

[1] *Pérez* v. *Tribl. Superior,* supra, págs. 843 y 858–859.

"patrimonio de hambre" [2] de los hijos confrontados con una presunción adversa de legitimidad cuando declaramos en *Agosto* v. *Javierre*, 77 D.P.R. 471, 493 (1954), que "el art. 116, interpretado literalmente en el sentido de crear una estricta exclusividad, aprovechable solamente por el marido o sus herederos, no es de aplicación a los hijos 'adulterinos' nacidos después de la vigencia de la Ley Núm. 229 de 1942, y a que tal ley, al crear una nueva causa de acción de filiación, en favor de esos hijos 'ilegítimos', les concede la facultad, esencial, y necesaria a la acción filiatoria, de impugnar la legitimidad. En otras palabras, la Ley Núm. 229 crea una nueva categoría de personas que pueden impugnar la legitimidad, y en ello trasciende y va más allá de los límites de exclusividad establecidos en el art. 116". *Agosto* v. *Javierre*, supra, no legisló añadiendo al citado artículo por decisión judicial una nueva persona, el propio hijo de filiación enmarañada; simple y llanamente le insufló vitalidad de causa de acción y reconoció en el hijo personalidad para reclamar su filiación y promover el derecho que la citada ley especial de 1942 le había conferido. No es concebible la existencia de un derecho sin la correlativa facultad de quien lo disfruta para hacerlo valer y respetar. La decisión en *Agosto*, supra, tuvo la irremisible consecuencia de revocar expresamente[3] a *Pueblo* v. *Santiago*, 70 D.P.R. 837 (1950), y *Pérez* v. *Rosario*, 72 D.P.R. 514 (1951), paralizados por la exclusividad discriminante del Art. 116 en su precepto de que "la legitimidad puede ser impugnada solamente por el marido o sus legítimos herederos". La decisión en *Pérez* v. *Tribl. Superior*, supra, se produjo en *certiorari* expedido en un caso criminal por abandono de menores bajo el Art. 263 del Código Penal de 1937, a diferencia de *Agosto* v. *Javierre* que atendió a una demanda de alimentos en el anterior Tribunal de Distrito (hoy Superior). *Pérez* v. *Tribl. Superior* intentó revivir a

---

[2] *Pérez, ibid.* pág. 859.

[3] Se alude a la revocación expresa a las págs. 478 y 495 de *Agosto* v. *Javierre*, supra.

*Pueblo* v. *Santiago* y *Pérez* v. *Rosario*, en una estrecha limitación de la doctrina del primero a los hijos que se hallaren en la situación especial de la Ley Núm. 229 de 1942, para ya casi al final resolver que la menor envuelta en el proceso criminal por abandono "tiene derecho a instituir una acción civil sobre declaración de paternidad y alimentos contra el aquí peticionario y demostrar que él es su padre, aunque vaya envuelta la impugnación de la paternidad de ley. . . . [L]a acción a seguirse debe permitirle en ley cambiar de un estado filiatorio al otro con la debida adjudicación de los derechos de todas las partes afectadas, inclusive, cualquier conflicto de interés entre la menor y su propia madre ya que como consecuencia de la reclamación dejará de pertenecer a una familia con todos los derechos que en ella le corresponden para formar parte de otra distinta con otros derechos o sin ninguno de ellos". *Ibid.*, pág. 849.

La menor que en este caso nos concierne nació protegida por las disposiciones de nuestra Constitución que consagra como inviolable la dignidad del ser humano (Art. II, Sec. 1). Es atributo de esa dignidad, y medio de hacer viable la protección contra el discrimen, la búsqueda y determinación de la paternidad cuestionada. La Constitución no necesita de estatuto habilitador para imponer su majestad de ley fundamental del país. No hay que añadir por legislación al Art. 116 del Código Civil, el hijo como parte realmente interesada en el descubrimiento de su filiación, al marido y sus herederos allí designados como únicos impugnadores de la paternidad legítima. Sin embargo, la acción criminal por abandono de menores no empece su ampliado ámbito en la determinación de paternidad, no provee intervención ni audiencia del padre legítimo que es parte indispensable en el procedimiento de impugnación. "El derecho a alimentos surge de la filiación, la cual debe establecerse previamente." *Agosto* v. *Javierre*, supra, a la pág. 496. A tal extremo, el Tribunal de Distrito resulta cuando menos foro inadecuado para impugnar la paternidad legítima.

Aparte de lo expresado, debe recordarse que *Pérez* v. *Tribl. Superior*, (⁴) supra, se dio en *certiorari* para revisar la sentencia recaída en un caso criminal por abandono de menores, resolviendo que *"como cuestión de derecho no se puede demandar responsabilidad criminal contra otra persona que no sea el padre que la ley reconoce y en quien recae la responsabilidad de alimentar, mientras esta paternidad subsista y no haya desaparecido, a menos que la misma pudiera quedar legalmente impugnada o destruida por la sentencia dictada en el propio proceso penal, lo cual aquí no es posible bajo nuestro estado de legislación"*. *Ibid.*, págs. 848–849. Su inaplicación a la presente acción civil sobre paternidad y alimentos, es evidente.

Aun cuando hemos preconizado la integración de procedimientos, y en materia de paternidad reconocido la naturaleza dual civil y criminal del proceso bajo el Art. 158 del Código Penal, 33 L.P.R.A. sec. 4241, que en los casos en que se determina la paternidad tiene como consecuencia final la inscripción del menor en el Registro Demográfico como hijo del acusado (*Pol Sella* v. *Lugo Christian*, 107 D.P.R. 540 (1978)), la prohibición de *Pérez* v. *Tribl. Superior*, que circunscribe la acción penal al padre legítimo, sólo podrá ser superada por iniciativa de la Asamblea Legislativa.

■ La acción civil instada por la madre es una que plantea un conflicto de intereses con la hija representada, para quien se propone un cambio en su estado civil hasta ahora asentado en una presunción de legitimidad. Para el caso, ordena el Art. 160 del Código, 31 L.P.R.A. sec. 617, que siempre que alguno de los padres tenga un interés opuesto al de sus hijos no emancipados, el Tribunal Superior nombrará a éstos un defensor que los represente en juicio y fuera de él. Toda vez que la Regla 15.2 de Procedimiento Civil instruye

---

(⁴) La decisión en *Pérez* v. *Tribl. Superior*, supra, es de 1960, para cuya fecha la acción bajo el Art. 263 del Código Penal era de naturaleza exclusivamente criminal, y anterior, por tanto, a la Ley Núm. 10 de 16 de mayo de 1966 (33 L.P.R.A. sec. 991) que dio al proceso por abandono de menores un carácter mixto penal y civil. *Cf. Pol Sella*, infra.

que el menor cuando es parte interesada deberá comparecer por medio de su padre o madre con patria potestad, la reclamación está correctamente promovida y la designación de defensor judicial que en la presente acción propiamente puede recaer en un fiscal asignado a asuntos de menores, normalizará la situación procesal encaminada hacia el juicio en los méritos.

*Se expedirá el auto, se revocará la sentencia revisada y se devolverá el caso a instancia para continuación de procedimientos consistentes con esta opinión.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión. El Juez Asociado Señor Torres Rigual no intervino.