La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
La controversia ante nuestra consideración requiere que determinemos si actuó correctamente el Tribunal de Apelaciones al ordenar que la Procuradora de Asuntos de Familia instara en representación de un menor, como su defensora judicial, una acción de filiación que requiere la impugnación de su estado filiatorio actual. Examinemos los hechos que dan paso a esta controversia.
I
El 5 de septiembre de 2002 la señora Sorani Jiménez dio a luz un niño a quien el Sr. José Miguel Álvareztorre San Miguel reconoció como su hijo, mediante inscripción en el Registro Demográfico el 18 de septiembre de 2002. *407 Aproximadamente un año después de la inscripción, el 5 de septiembre de 2003, el señor Álvareztorre presentó una de-manda, en el caso KFI-2003-0025, sobre impugnación de reconocimiento voluntario. Adujo que tras conocer que no era el progenitor del menor se realizó una prueba de pater-nidad la cual confirmó que no era el padre biológico del niño.
La señora Sorani Jiménez compareció ante el foro pri-mario en representación de su hijo, y solicitó la desestima-ción de la demanda por caducidad. El Tribunal de Primera Instancia designó a la Procuradora de Asuntos de Familia como defensora judicial del menor.
Posteriormente, la representación legal del señor Álva-reztorre informó al tribunal que el demandante había fa-llecido y solicitó la sustitución del difunto por sus padres, Oscar Álvareztorre Muñiz y Ana Amelia San Miguel Ramírez.(1) La Procuradora de Asuntos de Familia se opuso a la sustitución de partes y solicitó la desestimación por caducidad de la acción de impugnación de reconocimiento. El foro de instancia concedió un término a las partes para que se expresaran sobre la solicitud de desestimación.
El 21 de octubre de 2004 compareció ante el Tribunal de Primera Instancia el Sr. José Rodríguez Virella y presentó una Moción de Intervención. El señor Rodríguez sostuvo, bajo juramento, que el menor reconocido por el señor Álva-reztorre era hijo suyo y solicitó al foro primario que orde-nara la prueba de histocompatibilidad.
Así las cosas, la Procuradora de Asuntos de Familia pre-sentó una Moción en Cumplimiento de Orden y Solicitud de Desestimación. En dicha moción, adujo que la causa de acción había caducado porque el padre registral la pre-sentó luego de haber transcurrido el término de tres meses aplicable. El foro de instancia declaró “ha lugar” la referida moción sin expresión alguna sobre la sustitución de parte *408 previamente solicitada.(2) El 22 de diciembre de 2004 el tribunal emitió una sentencia, en el caso KFI-2003-0025, mediante la cual desestimó por caducidad la causa de ac-ción instada por el señor Álvareztorre así como la solicitud de intervención del señor Rodríguez Virella.(3)
El 14 de octubre de 2005 los esposos Álvareztorre San Miguel, padres del fallecido señor Álvareztorre, presenta-ron una demanda sobre impugnación de reconocimiento, en el caso KFI-2005-0034, contra la señora Sorani Jimé-nez, por sí y en representación de su hijo menor de edad.(4) Nuevamente, el 23 de mayo de 2006 la Procuradora de Asuntos de Familia, en representación del menor, solicitó la desestimación de la demanda. Sostuvo que al igual que el padre registral, los abuelos carecían de causa de acción para impugnar el reconocimiento voluntario.(5) La Procu-radora expuso que sólo el menor “tiene viva su causa de acción” por su derecho a llevar una acción filiatoria que requiera la impugnación de su filiación actual. El 2 de no-viembre de 2006 el Tribunal de Primera Instancia deses-timó la demanda. Apéndice, pág. 155.
Inconformes con dicho dictamen, los esposos Álvarezto-rre San Miguel acudieron al Tribunal de Apelaciones. En lo pertinente, el foro apelativo resolvió que había caducado la acción de impugnación de reconocimiento del señor Álva-reztorre y que, por consiguiente, los esposos Álvareztorre San Miguel no podían continuar con el procedimiento. No obstante, el foro apelativo ordenó a la Procuradora de Asuntos de Familia que presentara una acción de filiación *409 e impugnación de reconocimiento como defensora judicial del menor y procedió a devolver el caso al Tribunal de Pri-mera Instancia.
El Procurador General presentó ante el Tribunal de Apelaciones una Moción de Reconsideración, en la cual ex-puso que un Procurador de Asuntos de Familia está facul-tado para instar causas civiles y entre ellas puede promo-ver acciones de filiación. No obstante, indicó que, en el presente caso, el menor cuenta con una madre que ostenta su custodia y patria potestad, lo cual limitaría la interven-ción de la Procuradora de Asuntos de Familia. El foro ape-lativo declaró "no ha lugar” la referida moción.
Acude oportunamente ante este foro el Procurador General, en representación de la Procuradora de Asuntos de Familia, y señala la comisión del siguiente error:
Erró el Tribunal Apelativo al emitir una orden a la Procura-dora de Asuntos de Familia, quien fue nombrada defensora judicial del menor en este caso, para que ésta presente una acción de paternidad a favor del menor, siendo esto un acto discrecional de dicha funcionaría, el cual debe realizarse, luego de ponderar si esa gestión es en el mejor bienestar del menor. Petición de certiorari, pág. 14.
El Procurador General sostiene que la determinación del Tribunal de Apelaciones constituye una intervención inadecuada con la discreción de la Procuradora de Asuntos de Familia, como defensora judicial del menor, y contra-viene el mejor bienestar del niño por fomentar la inestabi-lidad jurídica de su estado civil. Además, el Procurador General trae ante nuestra atención varias sentencias del Tribunal de Apelaciones que arriban a resultados incompatibles en casos que presentan controversias similares a la que nos ocupa. (6) Sugiere que es necesario establecer una *410 normativa clara en relación al ámbito de discreción de un Procurador de Asuntos de Familia o un defensor judicial, nombrado por el tribunal, para instar acciones contradic-torias de paternidad.
Concedimos a la parte recurrida un término para mos-trar causa por la cual no debíamos expedir el recurso y revocar la determinación del foro apelativo. Contando con el beneficio de la comparecencia del Procurador General y la parte recurrida, procedemos a resolver.
II
A. Las controversias jurídicas concernientes al cuestionamiento de una filiación establecida, requieren un balance ponderado entre los intereses apremiantes de política pública que en dicha relación convergen. Debemos considerar tanto el interés en que la filiación jurídica sea reflejo de la realidad biológica como la importancia que reviste a la estabilidad jurídica del estado civil de las personas. Véanse: González Rosado v. Echevarría Muñiz, 169 D.P.R. 554 (2006); Mayol v. Torres, 164 D.P.R. 517 (2005).
Hemos definido la filiación como “el estado civil de la persona determinado por la situación que, dentro de una familia, le asigna el haber sido engendrada en ella o el estar en ella en virtud de la adopción o de otro hecho legalmente suficiente al efecto”. Castro v. Negrón, 159 D.P.R. 568, 579 — 580 (2003). Véase González Rosado v. Echevarría, supra, pág. 561.(7) Ciertamente, en principio la figura *411 jurídica de la filiación persigue reflejar el vínculo biológico que genera el hecho de la procreación. Mayol v. Torres, supra; J.L. Lacruz Berdejo y otros, Elementos de Derecho Civil, Dykinson, Madrid, 2002, T. VI, pág. 317; L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 7ma ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 249. Ahora bien, el vínculo biológico es insuficiente por sí mismo para que nazca el vínculo jurídico. Castro v. Negrón, supra, pág. 580, citando a R. Ortega-Vélez, Compendio de Derecho de Familia, San Juan, Pubs. JTS, 2000, T. I, Cap. VII, pág. 384. Así, “puede darse una filiación biológica, aunque no jurídica, cuando no conste quiénes son los padres de una persona. También puede darse el caso de que quien figure como padre jurídico no lo sea biológicamente”. Mayol v. Torres, supra, pág. 532.
Las incongruencias posibles entre el vínculo biológico y la filiación jurídica responden a que esta última “es mucho más rica y compleja que el mero dato o lazo biológico en cuanto categoría jurídica y social que es y en la que se integran componentes metajurídicos, elementos varios: volitivos, afectivos, sociales, [y] formales”. González Rosado v. Echevarría Muñiz, supra, pág. 562 esc. 3, citando a J. Rams Albesa y R. Moreno Flórez, Comentarios al Código Civil II, Barcelona, José María Bosch, 2000, Vol. 2., pág. 1077.(8) Procederemos a revisar la normativa concerniente a la figura jurídica de la filiación, considerando los intereses de política pública que sobre ella inciden.
B. Es norma reiterada que en nuestro ordenamiento jurídico coexisten dos vías principales mediante las cuales se establece la filiación paterna: la matrimonial y la extramatrimonial. González Rosado v. Echevarría Muñiz, supra, pág. 7. Véase, además, Almodovar v. Méndez Román, 125 D.P.R. 218, 235 (1990). En la primera de ambas, la filiación se obtiene en virtud de una presunción de pa- *412 ternidad prescrita en los Arts. 113 y 114 del Código Civil, 31 L.P.R.A. secs. 461 y 462, y que se sustenta por el hecho de haber nacido el hijo vigente el matrimonio de sus padres.(9) Id.
Por otra parte, un hijo o hija que no se concibe ni nace en el contexto de una relación matrimonial no está amparado por una presunción de paternidad. Castro v. Negrón, supra, pág. 584. Véanse: Mayol v. Torres, supra, pág. 537; Ortega-Vélez, op. cit., pág. 405. Ante tales circunstancias, la filiación “sólo puede acreditarse voluntariamente, cuando él o los padres reconocen al hijo, o, forzosamente, cuando se impone coactivamente ese reconocimiento mediante el ejercicio de la acción judicial correspondiente”. L. Martínez-Calcerrada, El Nuevo Derecho de Familia, 3ra ed., Madrid, [s. Ed.], 1983, T. I, pág. 72.(10)
El reconocimiento voluntario se califica como un acto jurídico por medio del cual se admite el hecho de ser padre o madre y, como consecuencia, el reconocido adquiere el estado civil de hijo con todos los efectos legales que ello acarrea.(11) Ortega-Vélez, op. cit., pág. 408. Véase Sánchez v. Sánchez, supra, pág. 664. En Mayol v. Torres, supra, pág. 539, resaltamos que dicho acto es fundamentalmente “individual; personalísimo; unilateral; formal, expreso y so- *413 lemne; puro e irrevocable”. (Escolios omitidos.) Véase Almodovar v. Méndez Román, supra, pág. 237.(12)
Aunque la filiación establecida por un acto de reconocimiento voluntario no surge en virtud de una presunción establecida por ley, genera una presunción de paternidad con efectos análogos a las presunciones establecidas por los Arts. 113 y 114 del Código Civil, supra. Castro v. Negrón, supra, pág. 585. Véase, además, González Rosado v. Echevarría Muñiz, supra, pág. 564. La filiación obtenida por el reconocimiento voluntario, así como la filiación matrimonial, crea un status familiae y tiene igual trascendencia jurídica no sólo respecto al padre, sino también respecto a la familia de éste. M. Amorós Guardiola y otros, Comentarios a las reformas del derecho de familia, Madrid, Ed. Tecnos, 1984, Vol. I, pág. 802.
Independientemente de que el estado de hijo se adquiera en virtud de una filiación matrimonial o extramatrimonial, urna vez adquirida tal condición, "se trata de un mismo y único grupo de personas: hijos”. (Énfasis suprimido.(13) Almodóvar v. Méndez Ramos, supra, pág. 251. Véase, además, Castro v. Negrón, supra, pág. 585. Como consecuencia, "nuestro ordenamiento [jurídico le] atribuye los mismos derechos, facultades, obligaciones, deberes, incompatibilidades y prohibiciones dentro de la organización de la familia y la sociedad”. Almodóvar v. Méndez, supra, pág. 234.
C. Discutidas las vías principales mediante las cuales se obtiene determinada filiación, procederemos a conside- *414 rar las acciones judiciales disponibles en el contexto filia-torio: (1) acciones de reclamación de filiación; (2) acciones de impugnación, y (3) las denominadas “acciones mixtas”. Castro v. Negrón, supra, pág. 586. Véase R. Ortega-Vélez, Filiación: Apuntes y Jurisprudencia, San Juan, Ed. Scisco, 1997, págs. 19-20.
Las acciones de reclamación de filiación “pretenden un pronunciamiento judicial que determine la filiación de una persona que con anterioridad no ostentaba, bien porque no tenga ninguna, bien porque pese a existir, la reclamación va acompañada de su impugnación”. Diez-Picazo y Gullón, op. cit., pág. 276. Corresponde al tribunal, tras constatar el hecho biológico de la paternidad, determinar el estado filiatorio mediante sentencia judicial.(14)
El segundo tipo de acción, dirigida a negar una filiación establecida, se divide a su vez en las acciones de impugnación de paternidad y las de impugnación del reconocimiento. Castro v. Negrón, supra, págs. 586-587. En particular, las acciones de impugnación de paternidad se refieren al cuestionamiento judicial de la filiación obtenida por la vía matrimonial.(15) Almodóvar v. Méndez Román, supra, pág. 241. Estas acciones inciden directamente sobre el régimen y la organización familiar, por lo que están revestidas de un alto interés público. Sánchez v. Sánchez, supra, pág. 665. Véase, además, Ortega-Vélez, Filiación: Apuntes y Jurisprudencia, op. cit., pág. 19.
*415 Por otra parte, aunque el reconocimiento voluntario es fundamentalmente irrevocable, es susceptible de ser impugnado judicialmente por fundamentos jurídicos aceptados por nuestro ordenamiento.(16) Mayol v. Torres, supra, pág. 540. Véase González Rosado v. Echevarría Muñiz, supra, págs. 564-565. Así, se admite una acción de impugnación por vicios en el reconocimiento por medio de la cual “no se cuestiona la verdad de la filiación, ni se ataca el nexo biológico, sino sólo la validez del reconocimiento como título de determinación legal”. Castro v. Negrón, supra, pág. 589. Véase, además, Sánchez v. Sánchez, supra. Para prevalecer en este tipo de acción es necesario demostrar ante el foro judicial que la voluntad del reconocedor estuvo viciada por haber mediado error, violencia o intimidación. Íd.
En Mayol v. Torres, supra, adoptamos como fundamento para una acción de impugnación del reconocimiento la inexactitud o falta de veracidad del estado filiatorio. Esta acción “permite que un presunto progenitor impugne su reconocimiento voluntario mediante la ausencia del vínculo biológico, sin necesidad de probar otro vicio del consentimiento”. González Rosado v. Echevarría Muñiz, supra, págs. 566-567.
El tercer tipo de acciones, las acciones mixtas, procuran “la declaración de determinada filiación mientras que, al mismo tiempo, conllevan la negación de otra contradictoria”. Castro v. Negrón, supra, pág. 586. Véase Ortega-Vélez, Filiación: Apuntes y Jurisprudencia, op. cit, pág. 19. En la acción mixta la impugnación es una consecuencia necesaria y accesoria de la búsqueda de una filiación distinta a la que se ostenta.
*416 D. El interés en evitar la incertidumbre y pro-mover la estabilidad jurídica de la relación filiatoria requiere que los términos aplicables a las acciones que pretendan su impugnación sean de caducidad.(17) Castro v. Negrón, supra, págs. 595-596. Véanse: Almodóvar v. Méndez Román, supra, pág. 260; González v. Echevarría, supra. Hemos sostenido que al establecer unos plazos cortos de caducidad para ejercer las acciones de impugnación “el legislador logró proteger el interés apremiante en la estabilidad del estado filiatorio ...” Mayol v. Torres, supra, pág. 553. Véanse: Sánchez v. Sánchez, supra, pág. 669; González Rosado v. Echevarría Muñiz, supra. Una vez transcurren los plazos de caducidad aplicables, se consolida el status familiae adquirido por el hijo. Almodóvar v. Méndez Román, supra.
En el escenario de una acción de impugnación de paternidad, el Art. 117 del Código Civil, 31 L.P.R.A. sec. 465, dispone que ésta debe presentarse “dentro de los tres (3) meses siguientes a la inscripción del nacimiento en el registro si el marido se hallare en Puerto Rico, y de los seis (6) meses si estuviere fuera de Puerto Rico, a contar desde que tuvo conocimiento del nacimiento”.
En Almodóvar v. Méndez Román, supra, resolvimos que, por imperativo del principio de igualdad entre los hijos, a una acción de impugnación de reconocimiento le aplican iguales plazos de caducidad.(18) La posición adoptada requirió aclarar que en caso de haber mediado violencia o intimidación, el plazo comenzaría a transcurrir una vez cesaran estas circunstancias. Id., pág. 261. Por otra *417 parte, sostuvimos que para una acción de impugnación de reconocimiento por error el plazo de tres meses transcurri-ría desde la fecha en que se realizó el reconocimiento. Id. Posteriormente, en González Rosado v. Echevarría Muñiz, supra, determinamos que la acción de impugnación de re-conocimiento por inexactitud o falta de veracidad, adop-tada en Mayol v. Torres, supra, está igualmente sujeta a un plazo de caducidad de tres meses a partir del acto de reconocimiento.
En aquellas instancias en las que la acción de impugnación se promueva por el hijo, como consecuencia necesaria de la búsqueda de su padre biológico, prevalecen los plazos dispuestos en el Art. 126 del Código Civil, 31 L.P.R.A. sec. 505. Sánchez v. Sánchez, supra. El citado artículo dispone que la acción filiatoria podrá presentarse por el hijo
... en vida de los presuntos padres, o un año después de su muerte, salvo en los casos siguientes:
(1) Si el padre o la madre hubiesen fallecido durante la me-nor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad.
(2) Si después de la muerte del padre o de la madre apare-ciere algún documento de que antes no se hubiese tenido no-ticia, en el que reconozcan expresamente al hijo.
En este caso la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento.
III
A. La controversia que nos ocupa requiere que precise-mos los conceptos capacidad, parte interesada y legitima-ción, los cuales han sido utilizados indistintamente por este Tribunal al considerar quiénes están facultados en *418 nuestro ordenamiento para presentar una acción de im-pugnación de paternidad o reconocimiento.(19)
Al referirnos al término capacidad hemos se-ñalado la diferencia entre los conceptos capacidad jurídica y capacidad de obrar. Asoc. Res. Est. Cidra v. Future Dev., 152 D.P.R. 54, 66 (2000). El primero de ambos, equivalente a la personalidad jurídica, “se ha definido como la aptitud para ser sujeto de derechos y obligaciones”. Id. Por su parte, la capacidad de obrar se refiere a “la capacidad para gobernar esos derechos y obligaciones de que se es titular”, Íd., pág. 67.
En el contexto del procedimiento civil, se hace referencia a los términos capacidad para ser parte y capacidad procesal. El profesor Hernández Colón explica que el concepto “capacidad” comprende “la aptitud para ser sujeto de derechos y deberes en el proceso (capacidad para ser parte) así como la posibilidad de su ejercicio y actuación (capacidad procesal)”. R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 1002, pág. 96 esc. 6. Podemos apreciar que la capacidad para ser parte constituye una manifestación de la capacidad jurídica, mientras que la capacidad procesal lo es de la capacidad de obrar.(20)
Precisamente, al ser la capacidad procesal una manifes-tación de la capacidad de obrar, las restricciones a esta última implican la falta de capacidad para comparecer en juicio. F. Ramos Méndez, Derecho Procesal Civil, 3ra ed., *419 Barcelona, Ed. Bosch, 1986, pág. 247. A modo de ejemplo, un menor de edad, aunque posee personalidad jurídica, ca-rece de capacidad de obrar y, como consecuencia, en un procedimiento judicial debe comparecer representado por su padre o madre con patria potestad, su tutor general o un defensor judicial. Hernández Colón, op. cit., Sec. 1110, pág. 131.
Por otro lado, el término parte realmente interesada “es un medio para identificar a la persona que posee el derecho que se pretende proteger”. (Traducción nuestra.) 6A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d Sec. 1542 et seq., pág. 327 (1990).(21) A este concepto alude la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, al disponer que “[t]odo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama En Asoc. de Res. Est. Cidra v. Future Dev., supra, expusimos que mediante este concepto se persigue identificar si existe un interés significativo por parte del demandante en la acción particular que pretende promover. Íd., pág. 67, citando a Wright, Miller and Kane, supra, Sec. 1542, págs. 328-329.
Las diferencias conceptuales entre ambos términos permiten que una persona pueda ser considerada como parte interesada y, a su vez, carezca de capacidad procesal. Hernández Colón, op. cit., Sec. 1002, pág. 96. De igual forma, es posible ostentar la capacidad necesaria para comparecer al proceso pero carecer del interés requerido para figurar como parte en éste. Id.
Discutidos los conceptos “capacidad” y “parte interesada”, estimamos necesario abordar el término “legitimación”. En Col. Ópticos de P.R. v. Vani Visual Center, 124 *420 D.P.R. 559, 563 (1989), expusimos que “[p]ara que haya ‘acción legitimada’ tiene siempre que existir la ‘capacidad para demandar’ pero no todo el que tiene ‘capacidad para demandar’ tiene ‘acción legitimada’ en un pleito específico. En cada pleito además de ‘capacidad para demandar’, la parte interesada deberá demostrar que tiene un ‘interés legítimo’ ”. Id., citando a R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pág. 132. Entendiéndose, pues, la legitimación o acción legitimada como “la facultad de poder comparecer y actuar en juicio como demandante, deman-dado, tercero, o en representación de cualquiera de ellos”. Serrano Geyls, op. cit., pág. 132. Es requisito ostentar legitimación activa para figurar como demandante y legiti-mación pasiva para ser demandado. Col. Opticos de P.R. v. Vani Visual Center, supra, pág. 563.
Afirma Hernández Colón, que el concepto “legitimación” ha sido incorporado a nuestro ordenamiento procesal y es germano a lo dispuesto en la Regla 15.1 de Procedimiento Civil, supra. Hernández Colón, op. cit., See 1002, pág. 93. La legitimación, según este autor, es exigible en todo proceso y consiste en “la razón jurídica que asiste a la parte actora para comparecer ante el tribunal y obtener una sentencia vinculante”. Id., Sec. 1002, pág. 93.
B. Con el fin de propiciar la estabilidad jurídica de las relaciones filiatorias, la normativa aplicable a las acciones de impugnación de paternidad y reconocimiento establece no sólo plazos perentorios de caducidad, sino también estrictos requisitos de legitimación activa. González Rosado v. Echevarría Muñiz, supra, pág. 562. Así, las acciones de impugnación de paternidad e impugnación de reconocimiento sólo pueden instarse por aquellos que estén legitimados para ello y no por cualquier interesado. Sánchez v. Sánchez, supra; Castro v. Negrón, supra; Mayol v. Torres, supra, pág. 544 esc. 15. Hemos reiterado que las *421 repercusiones de estas acciones en la intimidad personal y familiar impiden que sean consideradas como públicas. íd. Procederemos a examinar quiénes están legitimados acti-vamente para instar una acción de impugnación de pater-nidad y de reconocimiento de acuerdo con la ley y la juris-prudencia aplicable.
El Art. 116 del Código Civil, 31 L.P.R.A. see. 464, restringe la facultad de instar una acción de impugnación de paternidad al “marido o sus legítimos herederos”. En particular, los herederos sólo podrán instar o continuar la referida acción de impugnación si: (1) el marido fallece antes de transcurrido el plazo para deducir su acción en juicio; (2) el marido muere después de haber presentado la demanda y sin haber desistido de ella, y (3) el hijo nació después de la muerte del marido. Art. 116 del Código Civil, supra.
En Pueblo v. Santiago, 70 D.P.R. 837, 840 (1950), en virtud del texto del Art. 116, supra, este Tribunal indicó que “[a]l especificar el Código quienes pueden impugnar la legitimidad, naturalmente, excluyó a aquellos que no men-cionó en el citado artículo. Si hubiere sido la intención del legislador investir al Estado con la facultad de impugnar la legitimidad, fácil le hubiera sido hacerlo”. Véase Agosto v. Javierre, 77 D.P.R. 471, 477 (1954).(22)
A mediados del pasado siglo, sostuvimos que tras la aprobación de la Ley Núm. 229 de 12 de mayo de 1942 (Ley Núm. 229) se enmendó implícitamente el Art. 116, supra, de modo que no son solamente el marido o sus herederos los que pueden impugnar la paternidad. Agosto v. Javierre, supra. Indicamos que el hijo, para ejercitar la causa de acción de filiación que le reconoció la referida Ley *422 Núm. 229, podía impugnar incidentalmente su propia paternidad. Afirmamos que la Ley Núm. 229 trascendió los límites del Art. 116, supra, e instituyó una nueva categoría de personas facultadas para impugnar la paternidad. Agosto v. Jacierre, supra, pág. 493. Expusimos lo siguiente:
La situación sencilla es la de una ley general que enumera a ciertos grupos de personas como poseedores de cierta causa de acción, de impugnación de la legitimidad, y la de una ley especial posterior que establece un nuevo grupo de personas a quienes se le reconoce el mismo derecho de impugnación. Id.
Posteriormente, en Robles López v. Guevárez Santos, supra, reafirmamos que un hijo posee la facultad de instar una acción de impugnación de paternidad en vías de recla-mar su verdadera filiación. Más aún, reconocimos que el derecho de un hijo o hija a que se le considere como “parte realmente interesada” en la búsqueda y determinación de la filiación paterna, no dependía de un estatuto habilitador. íd., pág. 567. Sostuvimos que este derecho está amparado en el Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1, que consagra como inviolable la dignidad del ser humano. Véase Sánchez v. Sánchez, supra, pág. 671. Además, en dicha ocasión, determinamos que la acción de fi-liación e impugnación de paternidad instada por la madre, en representación de su hija menor de edad, estuvo correc-tamente promovida. Robles López v. Guevárez Santos, supra, págs. 568-569. No obstante, ante el conflicto de inte-reses entre la madre y la hija representada, para quien se proponía un cambio en su estado civil, se requirió la desig-nación de un defensor judicial. Íd.
Unos años más tarde, en Ramos v. Marrero, 116 D.P.R. 357 (1985), resolvimos que el padre biológico tiene derecho a instar una acción de impugnación de paternidad en virtud de la Ley Núm. 229. Concluimos entonces lo siguiente:
La condición de hijo está en relación directa con la de padre.
*423 De ello se colige que si el hijo tiene derecho bajo la Ley Núm. 229 a probar su filiación natural mediante la impugnación de la presunta filiación legítima, también el padre tiene derecho, para probar su paternidad natural y biológica, a impugnar la presunción de que su hijo es hijo legítimo de otro. Id., págs. 370-371.
En Calo Morales v. Cartagena Calo, supra, pág. 118, en síntesis de la jurisprudencia anterior, afirmamos que os-tentan “capacidad” para impugnar la paternidad: (1) el ma-rido o sus herederos según el Art. 116 del Código Civil, supra, (2) el progenitor o padre biológico, y (3) el hijo o la esposa en representación del hijo menor de edad.(23)
Aunque la jurisprudencia previamente discutida surgió en el contexto de acciones de impugnación de paternidad adquirió relevancia para las acciones de impugnación de reconocimiento a partir de lo resuelto en Almodovar v. Méndez Román, supra. En relación con estas acciones, el Art. 126 del Código Civil, supra, dispone que “ [e] 1 reconocimiento hecho a favor de un hijo podrá ser impugnado por aquéllos a quienes perjudique”. Vislumbramos en Almodóvar v. Méndez Román, supra, que el principio de igualdad entre los hijos, requiere que el citado Art. 126 se interprete de acuerdo con la jurisprudencia aplicable al Art. 116, supra. íd., pág. 264 esc. 33. Consecuentemente, indicamos que la acción de impugnación de reconocimiento podría instarse, además de por el reconocedor: (24) “por el padre biológico, por el propio reconocido —incidentalmente— en las circunstancias en que esté reclamando una filiación incompatible y por los herederos según lo establecido en el referido Art. 116”. (Citas omitidas.) Íd.
*424 Posteriormente, en Sánchez v. Sánchez, supra, pág. 666, reiteramos que el grupo de personas facultadas para instar la acción de impugnación de paternidad se circunscribe al previamente señalado en Calo Morales v. Cartagena Calo, supra. Expusimos que debido a las implicaciones de la ac-ción de impugnación de paternidad para la intimidad personal y familiar, “se restringe el círculo de quienes real-mente están legitimados activamente para ejercitar esta clase de acción”. Sánchez v. Sánchez, supra, pág. 666. Asimismo, sostuvimos que el interés de brindar estabilidad a las relaciones familiares impide que se le reconozca legiti-mación, a cualquier interesado para instar una acción de impugnación de paternidad. Id.
Por otra parte, en Sánchez v. Sánchez, supra, citamos con aprobación a Almodovar v. Méndez Román, supra, en el sentido de que poseen “legitimación activa para instar la acción de impugnación del reconocimiento a las mismas personas que ostentan legitimación para instar la acción de impugnación de paternidad legítima”. (Enfasis en el original.) Sánchez v. Sánchez, supra, pág. 669.
Nuevamente, en Castro v. Negrón, supra, reiteramos que el grupo de personas con legitimación activa para instar la acción de impugnación de paternidad, se circunscribe a: “el marido y sus herederos en circunstancias especiales; el hijo, como consecuencia incidental a la búsqueda de su verdadera filiación; el padre biológico, y la madre; en representación del hijo, cuando éste sea menor de edad.” (Citas omitidas y énfasis en el original.) Id., pág. 587. Aunque reconocimos el interés de que la filiación jurídica coincida con la realidad biológica, aclaramos que el fin de brindar estabilidad a las relaciones familiares impide que le confiramos a cualquier persona legitimación activa para ejercitar la acción de impugnación de paternidad. Id.
En Castro v. Negrón, supra, resolvimos que el alegado padre biológico ostenta legitimación para presentar la ac- *425 ción de impugnación de reconocimiento.(25) Al así resolver enfatizamos que no se trataba de cualquier tercero no in-teresado en el estado filiatorio del menor. íd., pág. 594. Además, recalcamos que la acción de impugnación del re-conocimiento incide en la intimidad de las personas por lo que “no se trata de una acción pública y sólo puede ejerci-tarse por aquellos que estén legalmente legitimados para hacerlo”. Íd., pág. 590. Véase, además, Ortega-Vélez, Compendio de Derecho de Familia, op. cit., pág. 409.(26)
IV
Aunque le hemos reconocido legitimación activa a la madre para instar una acción de impugnación de pa-ternidad o reconocimiento, en representación de su hijo menor de edad, en casos donde exista un posible conflicto de intereses hemos requerido la designación de un defensor judicial (“guardian ad litem”).(27)
Según indicamos previamente, un menor de edad, a pesar de tener personalidad jurídica, carece de capacidad de obrar y, por consiguiente, en un procedimiento judicial debe comparecer representado por su padre o madre con patria potestad o, en su defecto, por su tutor gene *426 ral o un defensor judicial. Hernández Colón, op. cit., Sec. 1110, pág. 131. Dicha representación corresponde con pre-lación al padre o la madre que ostenten la patria potestad. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. JTS, 2000, T. I, pág. 359. Ello en virtud del Art. 153 de Código Civil, 31 L.P.R.A. see. 601, el cual dispone que el padre y la madre tienen con respecto a sus hijos no emancipados el deber de “representarlos en el ejer-cicio de todas las acciones que puedan redundar en su provecho”.
Sin embargo, “[s]iempre que en algún asunto ambos padres o alguno de ellos tenga un interés opuesto al de sus hijos no emancipados, el Tribunal [de Primera Instancia] nombrará a éstos un defensor que los represente en juicio y fuera de él”. Art. 160 del Código Civil, 31 L.P.R.A. see. 617. Dicho artículo añade que el tribunal podrá realizar tal designación a petición de “cualquiera de los padres, del mismo menor, del fiscal o de cualquiera persona capaz para comparecer enjuicio ...”.
Reafirma la Regla 15.2. de Procedimiento Civil, 32 L.P.R.A. Ap. III, que un menor, quien es parte en un procedimiento judicial, “deberá comparecer por medio de su padre o madre con patria potestad, o en defecto, por medio de su tutor general”. Además, la Regla 15.2, supra, faculta al tribunal para nombrarle un defensor judicial a cualquier menor siempre que lo juzgue conveniente o se requiera por ley. Esta facultad se ejerce excepcionalmente en los casos en los cuales los padres, que ostentan la patria potestad, tienen un interés contrario al del menor.(28) Crespo v. Cintrón, 159 D.P.R. 290, 300 (2003).
En Crespo v. Cintrón, supra, sostuvimos que cualquier *427 persona capaz para comparecer en juicio ostenta legitima-ción activa para solicitar que se nombre un defensor judicial a un menor cuando exista un conflicto de intereses entre éste y sus padres. Id., pág. 302. Afirmamos que ello sirve al interés público que reviste los asuntos de menores y propende a la protección de los intereses patrimoniales del menor. Id.
V
La Ley Núm. 140 de 23 de abril de 1952 (Ley Núm. 140) creó el cargo de Procurador Especial de la Sala de Relacio-nes de Familia. Esta ley confería al Procurador de Relacio-nes de Familia la facultad de actuar como abogado de la parte peticionaria en procedimientos judiciales de emanci-pación y reconocimiento de “hijos naturales”, entre otros. See. 2 de la Ley Núm. 140, supra. En general, el Procura-dor de Relaciones de Familia podía ejercer las mismas fa-cultades que un fiscal auxiliar, aunque sólo con relación a asuntos que tramitara o que le encomendara el Juez de Relaciones de Familia del Tribunal Superior, conforme a la ley. Pueblo v. Tribunal Superior, 99 D.P.R. 30, 34 (1970).
La Ley Núm. 75 de 6 de junio de 1968 (Ley Núm. 75) derogó la Ley Núm. 140. Sin embargo, atribuyó a un Pro-curador de Relaciones de Familia, esencialmente, iguales facultades y deberes que la ley derogada. Ambas leyes, re-querían la cooperación de los Procuradores de Relaciones de Familia con los jueces del Tribunal Superior en los casos relacionados a asuntos de familia según los jueces dispusieran. Pueblo v. Tribunal Superior, supra, pág. 35.
Vigente la Ley Núm. 75, resolvimos que el Procurador Especial de Relaciones de Familia no estaba facultado por su propia iniciativa a intervenir en procedimientos de divorcio, salvo que juez de la Sala de Familia pidiera su cooperación. Pueblo v. Tribunal Superior, supra, pág. 35. Expusimos que entre las facultades expresamente conferí- *428 das por el legislador mediante la Ley Núm. 75, no se en-contraba la de intervenir en casos de divorcio. Id., págs. 34-35. Aunque por disposición de ley se le reconocía al fiscal la facultad de intervenir en una serie de procedimien-tos civiles concerniente a la familia, entre ellos el legisla-dor no incluyó la acción de divorcio.(29) Id., pág. 34. Estimamos, entonces, que correspondía al Poder Legisla-tivo determinar si habría de reconocerle intervención al Estado en casos de divorcio así como bajo cuáles circuns-tancias y condiciones. Íd., págs. 37-38.
Posteriormente, se adoptó la Ley Orgánica del Departamento de Justicia, Ley Núm. 205 de 9 de agosto de 2004 (Ley Núm. 205) para regir los procesos de este Departamento y proveer un marco legal adecuado para su estructura organizacional y administrativa.(30) Establece el Art. 72 de la Ley Núm. 205 (3 L.P.R.A. sec. 294x), como funciones generales de los fiscales y procuradores: "instar las causas criminales, civiles y especiales comprendidas dentro del marco de sus respectivas obligaciones y ejercer cabalmente aquellos otros deberes que le confiera la ley y le encomiende el Secretario.”
En particular, el Art. 76 de la Ley Núm. 205 (3 L.P.R.A. sec. 295a) reitera como función de los Procuradores de Asuntos de Familia actuar como abogados de la parte promovente en diferentes procedimientos, entre ellos los relacionados a emancipación y filiación.(31) Asimismo, faculta a los Procuradores de Asuntos de Familia a instar *429 “en representación del Estado Libre Asociado, las acciones que procedan como resultado de las investigaciones que realicen sobre alegado maltrato a menores de conformidad con la legislación vigente sobre la materia”. Art. 78 de la Ley Núm. 205 (3 L.P.R.A. sec. 295c).
La Ley Núm. 205 reafirma que los Procuradores de Asuntos de Familia tienen las facultades y atribuciones que corresponden a un fiscal, sin embargo, su ejercicio se limita a acciones que tramiten en los casos relacionados con asuntos de familia, de acuerdo con los términos establecidos por la propia ley. Art. 79 de la Ley Núm. 205 (3 L.P.R.A. sec. 295d).
VI
En el caso de autos, el señor Álvareztorre presentó una acción de impugnación de reconocimiento por inexactitud aproximadamente un año después de que inscribió al me-nor en el Registro Demográfico como hijo suyo. Cierta-mente, en ese momento ya había transcurrido el término de caducidad aplicable para presentar de la acción de im-pugnación de reconocimiento por inexactitud, conforme a lo resuelto en González Rosado v. Echevarría Muñiz, supra. Como consecuencia de lo anterior, la condición de hijo adquirida por el menor, en virtud del acto de reconoci-miento voluntario del señor Álvareztorre, no podía ser cuestionada por éste. De igual forma los esposos Álvarez-torre San Miguel carecían de causa de acción para impug-nar el reconocimiento voluntario efectuado por su hijo.
Por su parte, el menor, reconocido como hijo del señor Álvareztorre, conserva su derecho de instar una causa de acción para impugnar su filiación actual como consecuen-cia accesoria de la búsqueda de su padre biológico. Nos corresponde, entonces, determinar si actuó correctamente el Tribunal de Apelaciones al ordenar que la Procuradora de Asuntos de Familia, designada como defensora judicial *430 del menor, presentara la referida acción de filiación e im-pugnación, en representación del niño estando éste bajo la patria potestad de su madre.
Según expusimos anteriormente, una acción de impug-nación de reconocimiento sólo puede instarse por quienes estén legitimados para ello. A pesar de que el menor posee legitimación para presentar una acción de filiación que im-plique la impugnación su estado filiatorio actual, carece de la capacidad de obrar necesaria para comparecer por sí y, consecuentemente, requiere de una representación que su-pla la capacidad procesal. Con el objetivo de suplir dicha capacidad, le hemos reconocido legitimación para instar una acción de impugnación de paternidad o reconocimiento a la madre que ostente la patria potestad, mientras su hijo sea menor de edad.
Los casos sobre impugnación de paternidad o reconocimiento en los cuales se ha requerido la designación de un defensor judicial se circunscriben a remediar el posible conflicto que pueda suscitarse entre los intereses de la madre o padre, que insta la acción de impugnación de la filiación, y los intereses del menor representado. Extender las facultades de un defensor judicial hasta el punto de que pueda instar la referida acción de filiación e impugnación, en representación del menor, contravendría la normativa sobre legitimación activa y plazos de caducidad aplicable a las acciones de impugnación de paternidad o reconocimiento.
Recordemos que cualquier persona con capacidad para comparecer a juicio ostentaría, en términos generales, la legitimación para comparecer ante un tribunal y solicitar que se nombre un defensor judicial a un menor. De igual forma, un tribunal goza de la facultad para nombrar un defensor judicial que represente a un menor en un asunto determinado. Aplicar estos preceptos mecánicamente al contexto de las acciones fíliatorias es claramente improce-dente de acuerdo con la normativa sobre caducidad y legi- *431 timación activa aplicable a las acciones de impugnación de paternidad o de reconocimiento. Ello permitiría que, trans-curridos los plazos de caducidad aplicables, cualquier ciu-dadano, o el propio Estado, mientras el hijo sea menor de edad, pueda solicitar la designación de un defensor judicial que inste una acción de filiación e impugnación en repre-sentación del menor. De igual forma, se promovería la pre-sentación de acciones de impugnación de paternidad o re-conocimiento, que ya han caducado, con el propósito de que los tribunales designen un defensor judicial que continúe el procedimiento “en representación del menor”. En otras palabras, validar el curso de acción ordenado por el Tribunal de Apelaciones es darle visto bueno a un mero subter-fugio que lo que pretende es circunvalar el plazo de cadu-cidad establecido para este tipo de acción.
El interés de proteger la intimidad personal y familiar, en particular la intimidad de los menores afectados, así como el interés en evitar la incertidumbre prolongada del estado filiatorio, impide que se le confiera un carácter público a las acciones de impugnación de paternidad y reconocimiento, de acuerdo con el estado de derecho vigente. No podemos avalar que la legitimación del hijo y la figura del defensor judicial sean utilizadas como llave de escape para evadir los plazos de caducidad y la normativa sobre legitimación activa aplicable a estas acciones.
El niño, reconocido como hijo del señor Álvareztorre, se encuentra bajo la patria potestad de su madre, la señora Sorani Jiménez. Bajo estas circunstancias, es a la señora Sorani a quien nuestro ordenamiento le ha reconocido le-gitimación activa para instar la acción de impugnación ne-cesaria para la búsqueda de la filiación biológica de su hijo, mientras éste sea menor de edad. No olvidemos que el me-nor, una vez alcance la mayoría de edad, podría instar una acción filiatoria, en búsqueda de su padre biológico, que conlleve la impugnación de su filiación actual.
Por último, aclaramos que la Ley Núm. 205 no le *432 confiere a un Procurador de Asuntos de Familia la legiti-mación para instar una acción de filiación e impugnación de paternidad o reconocimiento. Tampoco existe otra dispo-sición legal en nuestro ordenamiento que le atribuya dicha función. Aunque la Ley Núm. 205 establece que los Procu-radores de Asuntos de Familia podrán fungir como aboga-dos de la parte promovente en procesos judiciales de filia-ción, ello no debe confundirse con la facultad de instar las referidas causas de acción. Esta facultad, reiteramos, se reserva a las personas a quien el estado de derecho vigente le reconoce la legitimación activa.
Concluimos que actuó correctamente el foro apelativo al confirmar la determinación del Tribunal de Primera Ins-tancia de desestimar la acción presentada por los esposos Álvareztorre San Miguel. No obstante, erró el Tribunal de Apelaciones al devolver el caso al foro primario y ordenar a la Procuradora de Asuntos de Familia que presentara una acción filiatoria y de impugnación de filiación como defen-sora judicial del menor.
VII
En virtud de los pronunciamientos que anteceden, se expide el auto solicitado y se revoca la sentencia del Tribunal de Apelaciones, en lo referente a la orden dirigida a la Procuradora de Asuntos de Familia para que instara la acción de filiación en representación del menor. Se con-firma la sentencia aquí recurrida en sus demás aspectos.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Kivera Pérez concurrió con el resultado sin opinión escrita.

 El señor Álvareztorre falleció el 14 de julio de 2004.

 No está ante nuestra consideración la corrección de esta determinación del Tribunal de Primera Instancia.

 El 16 de marzo de 2005 la representación legal del señor Álvareztorre pre-sentó una Moción de Relevo de Sentencia, la cual fue declarada “no ha lugar” el 21 de junio de 2005.

 Posteriormente, se enmendó la demanda para incluir como demandado al señor Rodríguez Virella.

 Además, adujo que ya el tribunal había emitido sentencia, en el caso KFI-2003-00025, mediante la cual se desestimó por caducidad la causa de acción del padre registral y que ésta advino final y firme.

 En el caso Héctor Alexis Vázquez v. Stephanie Vanesa Reyes Lozada et al., KLAN200700854, el Panel XI de la Región Judicial de Caguas determinó que un defensor judicial no está facultado por la ley o la jurisprudencia para instar la acción en representación del menor. Por el contrario, en el caso Ricardo Morales v. Sol Teresa García, KLAN200600955, el Panel IV de la Región Judicial de San Juan *410 sostuvo que era una determinación discrecional de la Procuradora el instar la acción de impugnación de paternidad en representación del menor. En una tercera senten-cia, el Panel de la Región Judicial de Fajardo, en el caso Carlos Miguel Toste v. Jackeline Alejandro, KLAN20070430, tras desestimar por caducidad una acción de impugnación de reconocimiento instada por el padre de la menor, devolvió el caso al foro primario para que la Procuradora, como defensora judicial de la menor, conti-nuara con la demanda de filiación e impugnación de reconocimiento.

 Véase L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 7ma ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 249.

 Véase, además, J.L. Lacruz Berdejo y otros, Elementos de Derecho Civil, Madrid, Ed. Dykinson, 2002, T. VI, pág. 317.

 De los referidos artículos surge lo siguiente: “[S]e presume hijo del cónyuge varón a quien nació bajo las siguientes circunstancias: (1) dentro de los 180 días de celebrarse el matrimonio, si el marido no impugna su paternidad; (2) después del referido plazo y durante el matrimonio; (3) antes de los 300 días a partir de la disolución del matrimonio.” González Rosado v. Echevarría Muñiz, supra, pág. 563; Véanse: Calo Morales v. Cartagena Calo, 129 D.P.R. 102, 115-116 (1991); Arts. 113 y 114 del Código Civil, 31 L.P.R.A. secs. 461 y 462. Por otro lado, a pesar de que el hijo nazca en el contexto extramatrimonial, el subsiguiente matrimonio de los progenito-res permite que la filiación sea considerada como matrimonial para todos los efectos. Arts. 119-122 del Código Civil, 31 L.P.R.A. secs. 481-484; Sánchez v. Sánchez, 154 D.P.R. 645, 663 (2001).

 Castro v. Negrón, supra, pág. 584. Véase, también, Mayol v. Torres, supra, pág. 537.

 Así, “[a]l destacarse la naturaleza no negocial del reconocimiento, lo que se afirma es el predominio de los efectos legales sobre la voluntad del reconocedor”. Diez-Picazo y Gullón, op. cit., pág. 262.

 Véanse, además: R. Ortega-Vélez, Compendio de Derecho de Familia, San Juan, Pubs JTS, 2000, T.I, Cap. VII, pág. 408; L. Zarraluqui Sánchez-Eznarriaga, Derecho de familia y de la persona, Barcelona, Ed. Bosch, 2007, T. III, págs. 96-98.

 Adquirir el estado de hijo por una u otra vía filiatoria es relevante única-mente para distinguir entre la acción de impugnación aplicable, en la eventualidad de que pretenda cuestionar la filiación previamente establecida. Sánchez v. Sánchez, supra, pág. 667.

 Véase E. Vázquez Bote, Derecho privado puertorriqueño: derecho de familia, San Juan, Butterworth de Puerto Rico, 1993, T. XI, pág. 303.

 En Almodóvar v. Méndez Román, supra, pág. 242, explicamos:
“A su vez esta impugnación de la paternidad del marido ha sido clasificada y distinguida por la doctrina en impugnación o desconocimiento riguroso de la pater-nidad y la denominada impugnación, o desconocimiento simple de ella. Bástenos con decir que en la primera corresponde al marido atacar la presunción legal produ-ciendo prueba que descarte el nexo biológico. En la segunda, ha de negar la filiación probando que el hijo de su mujer nació en los primeros ciento ochenta días del ma-trimonio, o después de los trescientos días de la disolución del matrimonio.” (Citas omitidas.)

 Distinguimos que “el principio de irrevocabilidad prohíbe al reconocedor invalidar su propia declaración anterior —o sea arrepentirse— mientras que la ac-ción para impugnar un reconocimiento voluntario tiene como objeto que el Estado deje sin efecto una filiación extramatrimonial legalmente establecida”. Mayol v. Torres, supra, pág. 540.

 “La caducidad es la decadencia de un derecho, o su pérdida, por no haber cumplido la formalidad o condición exigida por ley en un plazo determinado. Esta pérdida del derecho se produce automáticamente por no ejercitarse en el transcurso de dicho plazo.” Ortega-Vélez, Compendio de Derecho de Familia, op. cit., pág. 393, citado en Castro v. Negrón, supra, pág. 596 esc. 25.

 Así se revocó expresamente la norma de Alcaide v. Morales, 28 D.P.R. 278 (1920), la cual disponía de un término prescriptivo de 15 años para instar la acción de impugnación de reconocimiento.

 Véanse: Robles López v. Guevárez Santos, 109 D.P.R. 563 (1980); Calo Morales v. Cartagena Calo, supra; Sánchez v. Sánchez, supra; Castro v. Negrón, supra.

 Sobre este particular se ha señalado que: “Paralelamente a la capacidad jurídica del derecho civil se constituiría la capacidad para ser parte en juicio. Como réplica a la capacidad de obrar en derecho privado, se debería hablar de capacidad procesal en este sector del ordenamiento jurídico. [Se entiende la primera como] ‘la aptitud genérica para ser sujeto del proceso, para ser titular de la acción ... [y la segunda como] la aptitud para comparecer en juicio y por lo tanto realizar, ejecutar válidamente la actividad procesal, los actos de parte’.” (Enfasis suprimido.) F. Ramos Méndez, Derecho Procesal Civil, 3ra ed., Barcelona, Ed. Bosch, 1986, pág. 238.

 Citado en Asoc. Res. Est. Cidra v. Future Dev., 152 D.P.R. 54, 66, 67 (2000). Véase, también, R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 1002, pág. 96.

 Lo resuelto en Pueblo v. Santiago, 70 D.P.R. 837 (1950), ha sido expresamente revocado en tanto se le ha reconocido facultad a otras personas para instar una acción de impugnación de paternidad. No obstante, la jurisprudencia posterior no le ha conferido un carácter público a este de tipo de acción.

 Aunque en Calo Morales v. Cartagena Calo, supra, se utilizó el término capacidad, conceptualmente se está haciendo referencia a las personas que ostentan legitimación para instar una acción de impugnación de paternidad.

 A éste se le reconoció legitimación para instar la acción de impugnación de reconocimiento desde principios del pasado siglo. Almodóvar v. Méndez Román, supra, pág. 243.

 Ello en virtud de la tendencia a equiparar las acciones de impugnación de reconocimiento y paternidad y de “reconocerle legitimación activa para instar la acción de impugnación de reconocimiento a las mismas personas que poseen legiti-mación activa para ejercitar la acción de impugnación de paternidad”. Castro v. Negrón, supra, pág. 590.

 Es preciso notar que ni el Código Civil ni la jurisprudencia antes expuesta le reconocen al Estado la facultad de instar una acción de impugnación de paternidad o reconocimiento. Por el contrario, la Ley de Enjuiciamiento Civil de España, LEC 1/2000, en su Art. 765.1 establece expresamente que “[l]as acciones de determinación o de impugnación de la filiación que, conforme a lo dispuesto en la legislación civil, correspondan al hijo menor de edad o incapacitado podrán ser ejercitadas por su representante legal o por el Ministerio Fiscal, indistintamente”. De igual forma el Art. 129 del Código Civil español, tras la reforma de 1981, confirió legitimación indirecta al Ministerio Fiscal o a quien ostentara la representación legal del menor. Véase M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1984, T. III, Vol. 1, págs. 558-559.

 Eg.: Robles López v. Guevárez Santos, supra; Castro v. Negrón, supra.

 interés opuesto a que se refiere [el Art. 160] ha sido interpretado en el sentido de que exista una incompatibilidad de intereses sobre determinados bienes, por ser los padres y los hijos, por ejemplo, copartícipes de una misma herencia o, respectivamente, herederos y legatarios de la misma sucesión”. Crespo v. Cintrón, 159 D.P.R. 290, 301 (2003). Véase Guerra v. Ortiz, 71 D.P.R. 613, 623 (1950).

 El Código Civil faculta a un fiscal o Procurador de Familia a ejercer ciertas acciones o intervenir en determinados procedimientos relacionados con la capacidad, estado civil o institución familiar. Eg.: Art. 182 (31 L.P.R.A. sec. 705); Art. 188 (31 L.P.R.A. sec. 711); Art. 193d (31 L.P.R.A. sec. 720); Art. 125 (31 L.P.R.A. sec. 504).

 La Ley Núm. 205 derogó la Ley Núm. 75.

 Esta representación legal se asumirá “a solicitud de parte interesada, luego de comprobar mediante declaración jurada o por los medios que señale el tribunal, que el solicitante carece de recursos suficientes para contratar los servicios de un abogado de conformidad con las normas de elegibilidad que establezca el Secretario mediante reglamento”. Art. 77 de la Ley Núm. 205 (3 L.P.R.A. sec. 295b).